## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br>        Plaintiff, <br><br>    v. <br><br> DEALERS WARRANTY, LLC d/b/a "FEDERAL AUTO PROTECTION", NATIONAL DEALERS WARRANTY, INC. d/b/a "NATIONAL DEALERS WARRANTY," TELE EUROPE B.V., JOHN DOE No. 1 (a/k/a owner, user or "spoofer" of telephone numbers 949-256-9145, 909-650-9178, 909-650-9173, 909-650-9154, 616-980-2584, 402-982-0477 and 402-982-0524) and JOHN DOES 2-50, <br><br>        Defendants. | Civil Action No. <br><br> _**Document Electronically Filed**_ |

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED AND GRANTING EXPEDITED DISCOVERY AND RELATED RELIEF

---

Philip R. Sellinger (PS-9369)
Ian S. Marx (IM-1704)
**GREENBERG TRAURIG, LLP**
200 Park Avenue; P.O. Box 677
Florham Park, New Jersey  07932-0677
(973) 360-7900 (Phone)
(973) 301-8410 (Facsimile)

Attorneys for Plaintiff
*Cellco Partnership d/b/a Verizon Wireless*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................1

A.    The Parties ....................................................................................................1

B.    The Telemarketing Calls...............................................................................2

C.    The Defendants are Responsible for these Calls............................................3

D.    The Telemarketing Calls Are Done Through an Autodialer ...........................4

E.    The Harm To Verizon Wireless.....................................................................5

ARGUMENT

      THE COURT SHOULD ENTER THE PROPOSED ORDER
      TO SHOW CAUSE AND A PRELIMINARY INJUNCTION..........................5

A.    Verizon Wireless Is Entitled to an Injunction Pursuant to Statutory Authority ................6

1.    Defendants Clearly Have Violated the TCPA .................................................7

2.    Defendants Clearly Have Violated the TCFAPA .............................................9

3.    Reasonable Likelihood of Future Violations .................................................10

B.    Verizon Wireless also is Entitled to an Injunction Pursuant to Federal Rule of Civil
      Procedure 65 ...............................................................................................10

1.    Likelihood of Success on the Merits.............................................................11
      a.    TCPA ...............................................................................................11
      b.    Violation of TCFAPA .......................................................................12
      c.    NJ CFA ............................................................................................12
      d.    Invasion of Privacy ..........................................................................13

2.    Irreparable Injury ........................................................................................14

3.    Balance of Harms and the Public Interest.....................................................15

C.    Expedited Discovery....................................................................................16

CONCLUSION.....................................................................................................16

TABLE OF AUTHORITIES

Federal Cases                                                                 Page(s)

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100 (3d Cir. 1988) .......... 10

*Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir. 2006) .............................................................. 5

*Government of V.I. v. Virgin Islands Paving, Inc.*, 714 F.2d 283 (3d Cir. 1983)......................... 6

*In re Bradshaw*, 233 B.R. 315 (D.N.J. 1999) ...................................................................... 6, 7, 9

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989)............................. 6

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
  Pharmaceuticals Co.*, 290 F.3d 578 (3d Cir. 2002)...................................................................10

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800 (3d Cir. 1998) ......................... 13

*TKR Cable Co. v. Cable City Corp.*, 1996 WL 465508 (D.N.J. 1996)........................................ 15

*Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, (9th Cir. 1995), *cert.
  denied*, 516 U.S. 1145 (1996) ..................................................................................................15

*United States Postal Service v. Beamish*, 466 F.2d 804 (3d Cir. 1972)........................................ 6

*United States v. Spectro Foods Corp.*, 544 F.2d 1175 (3d Cir. 1976) ........................................... 6

*U.S. v. Toys "R" Us, Inc.*, 754 F. Supp. 1050 (D.N.J. 1991) ................................................... 6, 7


State Cases

*Hennessey v. Coastal Eagle Point Oil Co.*,  129 N.J. 81 (1992) ........................................... 12, 13

*J.H. Renarde, Inc. v. Sims*, 312 N.J.Super. 195 (Ch. Div. 1998)............................................ 14, 15

*Jersey City Ass'n for Separation of Church and State v. Jersey City*, 34 N.J. 177 (1961) ........... 15

*Kaplan v. Democrat and Chronicle*,  698 N.Y.S.2d 799 (N.Y. App. Div. 1999)........................... 7

*Kinsella v. Welch*,  362 N.J. Super. 143 (App. Div. 2003) ......................................................... 13

*Schulman v. Chase Manhattan Bank*,  268 A.D.2d 174 (N.Y. App. Div. 2000) ..................... 7, 11

*Sunbeam Corp. v. Windsor 5th Avenue*, 14 N.J. 222 (1953) ..................................................... 14

*Szefczek v. Hillsborough Beacon*, 286 N.J. Super. 247 (Law Div. 1995)................................ 8, 11

Federal Statutes

15 U.S.C. §1367 .................................................................................................... 6
15 U.S.C. § 6101 ................................................................................................... 9
15 U.S.C. § 6104(a) ........................................................................................... 5,12
28 U.S.C. § 1332 .................................................................................................. 5
47 U.S.C. § 227 ............................................................................................. *passim*

State Statutes

N.J.S.A. 56:8-130 ............................................................................................... 12
N.J.S.A. 56:8-130(b) .......................................................................................... 12

Federal Rules

Federal Rule of Civil Procedure 65 .................................................................. *passim*

Federal Regulations

16 C.F.R. § 310.4(a)(7) ...................................................................................... 9, 11

## PRELIMINARY STATEMENT

Verizon Wireless brings this motion to bring an immediate halt to a massive illegal telemarketing campaign by Defendants.  Since late February 2009, Defendants or those acting on their behalf made over one million unsolicited telemarketing calls to Verizon Wireless subscribers, through the apparent use of an autodialing mechanism and a prerecorded message, offering to sell an extended auto warranty – conduct that Congress expressly prohibited in the federal Telephone Consumer Protection Act ("TCPA") and that likewise violates state consumer fraud and privacy law.  Defendants have also violated the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA") and the FTC's telemarketing regulations by seeking to hide their identity when making these unwanted telemarketing calls. Verizon Wireless seeks to preserve the privacy of its subscribers through entry of an injunction prohibiting Defendants' illegal conduct and an award of statutory and common law damages.  The TCPA and the TCFAPA expressly provide for the entry of preliminary injunctive relief, which, for the reasons set forth herein, should be granted.

## STATEMENT OF FACTS[1]

### A.    The Parties

Verizon Wireless is a leading provider of wireless communications with more than 80 million customers throughout New Jersey and the United States.  Many of Verizon Wireless' employees receive wireless telephone service through "concession accounts," which are wireless phone lines that Verizon Wireless maintains for its own or its employees' use.  *See* Ver. Compl. ¶ 2.

---

[1]    The facts in support of this application are set forth in the accompanying Verified Complaint, sworn to on April 15, 2009 (the "Ver. Compl."), by James Rogers of Verizon Wireless.

Defendant National Dealers Warranty, Inc. is a Missouri corporation with its principal place of business at 339 Midrivers Mall Drive, St. Peters, Missouri.  Upon information and belief, National Dealers Warranty does business under the fictional name "National Dealers Warranty."  *See* Ver. Compl., ¶ 4.  Defendant Dealers Warranty, LLC is a Missouri Limited Liability Company with its principal place of business at 745 Friedens Road, St. Charles, Missouri.  Upon information and belief, Dealers Warranty does business under the fictional name "Federal Auto Protection."  *See* Ver. Compl. ¶ 5.

Defendant Tele Europe B.V. is a Dutch company with its principal place of business at Papaverweg 34, 1032KJ Amsterdam, Holland.  *See* Ver. Compl. ¶ 6.  Tele Europe appears to be placing the telemarketing calls to Verizon Wireless customers on behalf of National Dealers Warranty and Dealers Warranty, LLC.

**B.    The Telemarketing Calls**

Defendants have engaged in a campaign of making unsolicited telemarketing calls to Verizon Wireless subscribers on their wireless phones, including calls made to employee concession accounts, by using an autodialer and prerecorded voice (the "Telemarketing Calls"). *See* Ver. Compl. ¶ 10.  Since late February 2009, numerous Verizon Wireless customers and employees have received calls on their wireless telephones consisting of a prerecorded voice message indicating that their car warranty is about to expire or has expired and urging the recipient to press "1" to speak to a representative.   When a recipient presses "1", he or she is connected to a person who asks for the make and model of their car in an effort to sell them an extended warranty.  *See* Ver. Compl. ¶ 11.

The Verizon Wireless customers and employees who have received these calls have reported a number of different phone numbers that appear on the caller ID when they received these calls.   These numbers include: 949-256-9145, 909-650-9178, 909-650-9173, 909-650-

9154, 616-980-2584, 402-982-0477 and 402-982-0524.  *See* Ver. Compl. ¶ 12.  The caller ID

that has appeared in connection with these calls does not contain the name of the company

making the call.  When recipients of these calls press "1" ask at the outset of the call for the

name of the company that is offering the warranty, the representative on the line often refuses to

provide the information or provides vague information that fails to identify the name of the

company. In addition, when Verizon Wireless customers and employees have attempted to call

back these numbers, they have received an automated message indicating that they received a

call from this number "in error" and directing them to press "1" to be removed from the list.  *See*

Ver. Compl. ¶ 12.

**C.**     **The Defendants are Responsible for these Calls**

Despite these efforts, Verizon Wireless has been able to develop evidence that

Defendants, and perhaps others working in concert with them, are responsible for the

Telemarketing Calls.

On March 11, 2009, a Verizon Wireless customer received a call that appeared to be from

909-650-9178 with an automated message seeking to sell her an auto warranty.   After the

customer pressed "1" in response to the message, she spoke to a representative named "Carl" and

expressed interest in purchasing a warranty and provided some information about a make and

model of a car.   When the Verizon Wireless employee asked "Carl" what company he was

associated with, "Carl" responded that he was with "Federal Auto Protection."   *See* Ver. Compl.

¶ 14.

On March 18, 2009, another Verizon Wireless employee received a call that appeared to

be from (949) 256-9145 with an automated message seeking to sell him an auto warranty.  After

the employee pressed "1" in response to the message, he spoke initially with two representatives

and was eventually transferred to a representative named "Patty."   When the employee asked

"Patty" what company she was with, "Patty" was evasive and did not provide an answer.  The employee then expressed interest in purchasing a warranty and provided some information about a make and model of a car but indicated he needed to go to another appointment and wanted to continue the conversation later.  "Patty" told the employee that he could call her back at (800) 774-0041.  Later that day, the employee called that number and spoke to Patty again.  Upon information and belief, the number (800) 774-0041 is assigned by Qwest Communications to defendant National Dealers Warranty.  *See* Ver. Compl. ¶ 15.

On March 19, 2009, the same Verizon Wireless employee received two further calls from "Patty" following up on his interest in purchasing the auto warranty.  The number that appeared on the caller ID for these calls was (800) 436-3185.  According to defendant National Dealers Warranty's website, www.ndwwarranty.com, (800) 436-3185 is the toll-free customer service number for defendant National Dealers Warranty.  *See* Ver. Compl. ¶ 16.

On March 25, 2009, another Verizon Wireless employee received a call that appeared to be from (402) 982-0524 with an automated message seeking to sell him an auto warranty.  After the employee pressed "1" in response to the message, he spoke to a representative named "Jeremy" and expressed interest in purchasing a warranty and provided some information about a make and model of a car.  When the Verizon Wireless employee asked "Jeremy" what company he was associated with, "Jeremy" responded that he was with "Federal Auto Protection."  *See* Ver. Compl. ¶ 17.  Accordingly, it appears that Dealers Warranty, National Dealers Warranty, Federal Auto Protection and Tele Europe, B.V. have been acting in concert with one another to make these Telemarketing Calls.  *See id.* at ¶¶ 11-17, 20-21.

**D.**     **The Telemarketing Calls Are Done Through an Autodialer**

Since late February 2009 alone, Defendants have made over one million calls to Verizon Wireless customers and/or concession accounts, of which approximately 2,990 were made to

Verizon Wireless concession accounts.  *See* Ver. Compl. ¶¶ 18-19.  The volume of calls placed from a single telephone number during very short time spans demonstrates that they were made by using automatic telephone dialing system equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.  For instance, on March 13, 2009, approximately 25,911 calls were made between 1:00 p.m. and 2:00 p.m. with a caller ID of 949-256-9145, or on average one call every approximately .13 seconds.  *See* Ver. Compl. ¶ 22.

## E.    The Harm To Verizon Wireless

These Telemarketing Calls not only invade the privacy of Verizon Wireless' customers and employees, they also damage Verizon Wireless's relationships with its customers and impose customer service costs on Verizon Wireless.  Verizon Wireless customers who have received Telemarketing Calls may blame Verizon Wireless for the annoyance and intrusion they have suffered as a result of receiving these calls.  These customers will often call Verizon Wireless Customer Service to complain about the calls and to request credits for the airtime used by these calls, thus causing Verizon Wireless to incur significant additional costs as a result of these calls.  *See* Ver. Compl. ¶ 24.  In addition, because Verizon Wireless customers may blame Verizon Wireless for the intrusion of the Telemarketing Calls, the Telemarketing Calls damage Verizon Wireless's reputation and cause Verizon Wireless to lose goodwill.  This damage to Verizon Wireless's reputation and loss of goodwill are irreparable injuries to Verizon Wireless.

## ARGUMENT

### THE COURT SHOULD ENTER THE PROPOSED ORDER TO SHOW CAUSE AND A PRELIMINARY INJUNCTION

The TCPA specifically provides that an aggrieved party such as Verizon Wireless may institute a private right of action seeking, among other relief, an injunction.  It states, in relevant

part, that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation."  47 U.S.C. § 227 (b)(3).[2]  The TCFAPA similarly provides that "an action may be brought to enjoin such telemarketing" that is done in violation of the statute.  *See* 15 U.S.C. § 6104(a).

**A.**     **Verizon Wireless Is Entitled to an Injunction Pursuant to Statutory Authority**

When preliminary injunctive relief is sought pursuant to statutory authority, the movant must establish (1) a violation of the statute sued upon; and (2) a reasonable likelihood of future violations of the statute in the absence of injunctive relief.  *U.S. v. Toys "R" Us, Inc.*, 754 F. Supp. 1050, 1053 (D.N.J. 1991); *see In re Bradshaw,* 233 B.R. 315, 326 (D.N.J. 1999).   No showing of irreparable harm is necessary in an action for a preliminary statutory injunction.  *In re Bradshaw,* 233 B.R. at 326; *Government of V.I. v. Virgin Islands Paving, Inc.,* 714 F.2d 283, 286 (3d Cir. 1983); *United States v. Spectro Foods Corp.,* 544 F.2d 1175, 1181 (3d Cir. 1976); *United States Postal Service v. Beamish*, 466 F.2d 804, 806 (3d Cir. 1972).  The traditional test is not applied because where "Congress has seen fit to act in a given area by enacting a statute, irreparable injury must be presumed in a statutory enforcement action."  *In re Bradshaw,* 233 B.R. at 326 (citing *United States v. Richlyn Laboratories, Inc.,* 827 F. Supp. 1145, 1150 (E.D. Pa. 1992)).  Moreover, an examination of whether a preliminary injunction pursuant to a statute is in the public interest is unnecessary because Congress acts in the public's interest.  *In re*

---

[2]   Although the TCPA does not provide federal jurisdiction for claims brought pursuant to the statute, this Court nevertheless has subject matter jurisdiction over this case under traditional diversity principles, since complete diversity exists among the parties.  *See*, *e.g.*, *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 343 (2d Cir. 2006); 28 U.S.C. § 1332.  This Court also has federal question jurisdiction over the TCFAPA claims pursuant to 15 U.S.C. § 6104(a) and supplemental jurisdiction over the TCPA as well as the other claims asserted.  28 U.S.C. § 1367.

*Bradshaw,* 233 B.R. at 326*; see Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 803 (3d Cir. 1989).

"A determination of whether there is reasonable likelihood of future violations is based upon the totality of the circumstances." *In re Bradshaw,* 233 B.R. at 329; *Toys "R" Us, Inc.,* 754 F. Supp. at 1059. Past misconduct is "highly suggestive of the likelihood of future violations." *In re Bradshaw,* 233 B.R. at 329 (quoting *SEC v. Management Dynamics*, 515 F.2d 801, 807 (2d Cir. 1975)). Indeed, when the misconduct "has been founded on systematic wrongdoing rather than an isolated occurrence, a court should be more willing to enjoin" the defendant from engaging in the wrongful conduct. *Id.* (quoting *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).

1.     **Defendants Clearly Have Violated the TCPA**

The TCPA, 47 U.S.C. § 227, *et seq.*, was enacted to, among other things, protect the privacy interests of wireless telephone users from the use of automated dialing equipment or prerecorded voices to make unsolicited telemarketing calls to cellular telephones. The TCPA provides, in relevant part, that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system <u>or</u> an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone." 47 U.S.C. § 227(b)(1)(emphasis added).

The TCPA specifically provides that an aggrieved party may institute a private right of action. It states, in relevant part, that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, . . . [and/or] to recover for actual monetary loss from such a violation, or to receive

$500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3); *Kaplan v. Democrat and Chronicle*, 698 N.Y.S.2d 799, 800 (N.Y. App. Div. 1999).

Defendants have violated the TCPA, in that they have, within the United States, made calls to telephone numbers assigned to cellular telephones, not for emergency purposes and not made with the prior express consent of the called party, using (1) an artificial or a prerecorded voice and/or (2) an automatic telephone dialing system, and/or they have participated in and facilitated in the making of such calls, and have benefitted from such calls having been made. *See Schulman v. Chase Manhattan Bank*, 268 A.D.2d 174, 175-176 (N.Y. App. Div. 2000); *see also Szefczek v. Hillsborough Beacon*, 286 N.J. Super. 247, 266-68 (Law Div. 1995) (issuing a permanent injunction for TCPA violations).

As shown earlier, it is beyond dispute that Defendants are responsible for the more than one million calls that Verizon Wireless customers and concession lines are receiving that are marketing auto warranties and that these calls involve prerecorded voice messages. This has been attested to by customers and employees who have received in some cases multiple calls with automated voice announcements that resulted in their being directed to the Defendants, and by the fact that requests for information concerning the products offered through the Telemarketing Calls directed customers and employees to telephone numbers associated with, and the physical location of, the Defendants.

Moreover, it is also plain that these calls are being generated by an automatic telephone dialing system. The term "automatic telephone dialing system" means equipment which has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). For example, Verizon Wireless data indicate that approximately 25,911 calls were made on March 13, 2009 with a

caller ID of 949-256-9145 to Verizon Wireless's customers and/or concession accounts from 1:00 p.m. and 2:00 p.m., or on average one call every approximately .13 seconds. The volume of calls placed from a single telephone number during very short time spans demonstrates that they were made by using automatic telephone dialing system equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator. There is simply no physical way that so many calls could be made by a human being dialing phone numbers without an automated dialing system.

### 2.     Defendants Clearly Have Violated the TCFAPA

The Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C. § 6101, *et seq.*, authorized the Federal Trade Commission to prescribe rules to prevent deceptive and abusive telemarketing practices. Among the practices deemed abusive by the FTC in its rules promulgated pursuant to the TCFAPA is a telemarketer's "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. . . ." 16 C.F.R. § 310.4(a)(7). Under the rules promulgated pursuant to the TCFAPA, it is also an abusive telemarketing act or practice "for a telemarketer in an outbound telephone call . . . to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information: (1) the identity of the seller . . . ." 16 C.F.R. § 310.4(d).

Defendants have violated the TCFAPA and associated FTC regulations by preventing the name of the telemarketer from appearing on customers' caller IDs when the customers receive Telemarketing Calls. Additionally, Defendants attempt to hide rather than disclose the identity of the company making these calls by refusing to disclose to customers the company offering the warranty at the outset of the call (if at all).

3.      **Reasonable Likelihood of Future Violations**

Defendants' misconduct is "highly suggestive" of future violations.   Just the sheer volume of Telemarketing Calls alone -- more than 1,082,932 in just over one month -- indicates that Defendants will continue to make such calls in the future.  The ease with which, and the minimal time in which, Defendants can make such calls through the use of an automatic telephone dialing system evidences that, without a preliminary injunction, it is reasonably likely that Defendants will continue to make Telemarketing Calls with minimal effort in violation of the TCPA.  Moreover, where the past misconduct is systematic, as it is here, courts are more willing to enjoin defendants from such wrongful conduct.  *See, e.g., In re Bradshaw*, 233 B.R. at 329.

*      *      *

Thus, Verizon Wireless has established that Defendants violated the TCPA   and TCFAPA and are reasonably likely to continue violating these statutes.   Accordingly, a preliminary injunction is warranted and should be issued.

**B.**     **Verizon Wireless also is Entitled to an Injunction Pursuant to Federal Rule of Civil Procedure 65**

Federal Rule of Civil Procedure 65, under which the Court is empowered to issue interim relief pending final disposition of a matter, provides an alternate source of authority under which the preliminary injunction should be issued.  *See Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100 (3d Cir. 1988).  In deciding whether to grant such preliminary injunctive relief, courts consider four basic principles:  (1) the likelihood that the moving party will succeed on the merits; (2)  the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.  *See Novartis Consumer Health, Inc.*

*v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002);

*Frank's GMC*, 847 F.2d at 102.

Although the statutory basis for an injunction exists for Verizon Wireless's TCPA claim,
under the Rule 65 analysis, a preliminary injunction is warranted as well.  Indeed, as summarized
below, Verizon Wireless handily satisfies each of these elements on its claims against
Defendants under not only the TCPA, but under the New Jersey Consumer Fraud Act and for
invasion of privacy.  The Court should enter the proposed Order to Show Cause and set a return
date for a hearing on a preliminary injunction, which should be granted.

**1.     Likelihood of Success on the Merits**

As summarized below, Verizon Wireless has demonstrated an overwhelming probability
that it will prevail on its claims against Defendants under the TCPA, TCFAPA, the New Jersey
Consumer Fraud Act and for invasion of privacy.

**a.     TCPA**

As previously explained, *supra* Part A.1., Defendants have violated the TCPA, in that
they have, within the United States, made calls to telephone numbers assigned to cellular
telephones, not for emergency purposes and not made with the prior express consent of the called
party, using (1) an automatic telephone dialing system and/or (2) an artificial or a prerecorded
voice.  *See Schulman v. Chase Manhattan Bank*, 268 A.D.2d 174, 175-176 (N.Y. App. Div.
2000); *see also Szefczek v. Hillsborough Beacon*, 286 N.J. Super. 247, 266-68 (Law Div. 1995)
(issuing a permanent injunction for TCPA violations).  Approximately 1,082,932 Telemarketing
Calls were made to Verizon Wireless's customers and/or concession accounts since February 23,
2009.  Such volume during a short time span demonstrates that the Telemarketing Calls were
made by using automatic telephone dialing system equipment that has the capacity to store or

produce telephone numbers to be called using a random or sequential number generator.  Thus, it is more than likely that Verizon Wireless will succeed on the merits of its claim under the TCPA.

### b.    Violation of TCFAPA

As previously explained, *supra* Part A.2, Defendants have violated the TCFAPA, in that they have engaged in practices deemed abusive by the FTC in its rules promulgated pursuant to the TCFAPA, by engaging in telemarketing and "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call. . . ." 16 C.F.R. § 310.4(a)(7).  Defendants have also violated the TCFAPA by "in an outbound telephone call . . . to induce the purchase of good or services . . . fail[ing] to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . . the identity of the seller."  16 C.F.R. § 310.4(d).

Defendants have violated the TCFAPA and associated FTC regulations by preventing the phone number and name of the telemarketer from appearing on customer's caller ID when they receive Telemarketing Calls.  The TCFAPA permits any person "adversely affected by any pattern or practice of telemarketing which violates any rule of the Commission" to bring an action for damages and/or to enjoin such conduct if the amount in controversy "exceeds the sum or value of $50,000 in actual damages."  *See* 15 U.S.C. § 6104(a).  Verizon Wireless has suffered in excess of $50,000 in actual damages as a result of Defendants making over one million illegal Telemarketing Calls to Verizon Wireless customers and employees, and thus, it is likely to prevail on its claim under the TCFAPA.

### c.    NJ CFA

N.J.S.A. 56:8-130(a) prohibits telemarketers from making or causing to be made any telemarketing sales call to a commercial mobile service device of any customer.  N.J.S.A. 56:8-

130(b) defines a "commercial mobile service device" to be "any equipment used for the purpose of providing commercial mobile service," including Verizon Wireless's customers' and employees' wireless phones.

Defendants have violated the Consumer Fraud Act, in that they, acting as telemarketers, have made or caused to be made telemarketing sales calls to customers' commercial mobile service devices.  Defendants' conduct of making unsolicited telemarketing calls to Verizon Wireless subscribers on their wireless phones, including calls made to employee concession accounts,  violates N.J.S.A. 56:8-130.

As a result of Defendants' violations of the New Jersey Consumer Fraud Act, Verizon Wireless has suffered injury, damages and an ascertainable loss of money.

### d.    Invasion of Privacy

One is subject to liability for the tort of invasion of privacy if one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, if the intrusion would be highly offensive to a reasonable person.  *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (1992); *Kinsella v. Welch*, 362 N.J. Super. 143, 156 (App. Div. 2003) (citing *Restatement (Second) of Torts* § 652B (1977)).

In engaging in the foregoing conduct, Defendants have intruded intentionally upon the solitude or seclusion of the recipients of the Telemarketing Calls, and/or upon their private affairs or concerns.  Such intrusion is, objectively, highly unreasonable and such conduct harms Verizon Wireless and its customers.  As a result, Defendants are liable for the invasion of privacy.  *See Hennessey*, 129 N.J. at 94-95; *Kinsella*, 362 N.J. Super. at 156.

*     *     *

Thus, Verizon Wireless has established the requisite likelihood of success on the merits of its claims against Defendants.

### 2.       Irreparable Injury

Defendants' conduct threatens Verizon Wireless with irreparable injury because their actions place in substantial jeopardy the hard-earned relationship that Verizon Wireless has forged and established with its more than 80 million customers.  Verizon Wireless's customers may blame Verizon Wireless, and it is plain that if Defendants' conduct is permitted to continue, Verizon Wireless's relationships with its customers will be further endangered.

Moreover, and as previously explained, the Defendants' conduct invades the privacy of Verizon Wireless's customers, who are the recipients of illegal and unwanted telemarketing on their wireless telephone lines.  Such customers, who may be damaged and harmed, may not have the ability or capacity to identify and pursue the Defendants for such misconduct, and thus, they will have suffered a wrong without a possible remedy.

It is well settled that "loss of control of reputation, loss of trade, and loss of good will" constitute irreparable injury.  *See*, *e.g.*, *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998).  Indeed, a threatened loss of customers such as Verizon Wireless faces as a result of Defendants' actions here, is precisely the circumstance in which interlocutory injunctive relief is necessary, because "one cannot quantify the amount of damages which will result" from a potential loss in customers.  *See*, *e.g.*, *Sunbeam Corp. v. Windsor 5th Avenue*, 14 N.J. 222, 233 (1953).  As explained by the New Jersey Supreme Court:

> The object of a preliminary injunction is to prevent some threatening, irreparable mischief which should be averted pending a full and deliberate investigation of the case, and acts which destroy a complainant's business, custom and profits are in this category and authorize the issue of a preliminary injunction.

*Sunbeam*, 14 N.J. at 233 (citing *Evening Times Printing & Publishing Co. v. American Newspaper Guild*, 124 N.J. Eq. 71, 74 (E. & A. 1938)).

The principle that preliminary injunctive relief must be entered to protect hard-earned customer relationships was aptly explained by the Chancery Court in *J.H. Renarde, Inc. v. Sims*, 312 N.J.Super. 195, 203 (Ch. Div. 1998):

> any attempt to quantify such damages would be problematic, not only in determining whether a particular customer who may be served by defendants is one which would have gone to plaintiff's business (but for the unlawful competition) but also because of the difficulty in ascertaining the monetary value of that loss of business. Under those circumstances, this factor should be viewed as supporting the issuance of the injunction.

312 N. J. Super. at 203 (citing *National Starch & Chemical Corp. v. Parker Chemical Corp.*, 219 N.J. Super. 158, 163 (App.Div. 1987)).  Thus, Verizon Wireless has demonstrated that it will suffer irreparable harm absent the requested relief.

### 3.      Balance of Harms and the Public Interest

As demonstrated above, Verizon Wireless and its customers are threatened with harm if Defendants are permitted to continue their conduct, while Defendants cannot complain if they are required to cease the fraudulent conduct.  The balance of harms is decidedly in favor of the injunctive relief sought, which also will benefit the public and Verizon Wireless's more than 80 million customers, who have the right to be protected from the Defendants' invasion of privacy. The requested relief would benefit the public interest.  *See Renarde*, *supra*, 312 N. J. Super. at 206.

It is hard to imagine any legitimate harm Defendants would suffer if the requested relief is granted, as a defendant who knowingly infringes another's rights "cannot complain of harm that will befall it when properly forced to desist from its infringing activities."  *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *cert. denied*, 516 U.S. 1145 (1996).

Any harm to Defendants from ceasing the wrongful conduct should not be legally cognizable and, in any event, is minimal compared to the diminution of the substantial value and goodwill inherent in Verizon Wireless's customer relations.  Nothing precludes Defendants from providing services that do not infringe upon Verizon Wireless's and its customers' rights, and preventing Defendants from continuing their illicit activities cannot be a compelling hardship.  Accordingly, the balance of hardships weighs strongly in Verizon Wireless's favor.

**C.**     **Expedited Discovery**

Finally, the Court should allow expedited discovery in advance of the return date for the preliminary injunction.  *See, e.g., TKR Cable* Co. *v. Cable City Corp.*, 1996 WL 465508 (D.N.J. 1996) (granting preliminary injunction and affirming grant of expedited discovery), *vacating on other grounds but affirming injunction*, 267 F.3d 196 (3d Cir. 2001).  Litigation, including disputes involving public matters such as this case, which involves important issues concerning customer privacy, should be expedited.  *Jersey City Ass'n for Separation of Church and State v. Jersey City,* 34 N.J. 177, 178 (1961).  A trial court may on application of either party fix a short date for completion of discovery and an early peremptory date thereafter for final trial.  *Id*.; *see also TKR Cable Co.*, 1996 WL465508 at *12 (granting preliminary injunction and affirming grant of expedited discovery).  The circumstances here warrant expedited discovery.

**CONCLUSION**

For the foregoing reasons, Verizon Wireless's application should be granted in its entirety.  The Court should enter the proposed Order to Show Cause and on the return date, enter a preliminary injunction.  The Court also should permit expedited discovery in advance of the return date.

Respectfully submitted,
GREENBERG TRAURIG, LLP


By:  */s/: Ian S. Marx*
    Philip R. Sellinger
    Ian S. Marx

200 Park Avenue
P.O. Box 677
Florham Park, New Jersey  07932-0677
(973) 360-7900 (Phone)
(973) 301-8410 (Facsimile)
Attorneys for Cellco Partnership
d/b/a Verizon Wireless

Dated:  April 16, 2009