[100]

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
CELLCO PARTNERSHIP d/b/a VERIZON :     Civil Action No.: 09-1814 (FLW)
WIRELESS and ONSTAR, LLC         :
                                   :
          Plaintiffs,             :                 **OPINION**
                                   :
v.                                         :
                                        :
DEALERS WARRANTY, LLC, *et al.*,     :
                                        :
          Defendants.           :
_____ :

Presently before the Court is the motion by Defendants Telephone Management Corporation ("TMC") and TM Caller ID, LLC ("TM Caller ID") (collectively, "Defendants"), to dismiss the Complaint brought by plaintiffs Verizon Wireless and OnStar, LLC ("Plaintiffs") pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or alternatively for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3).  The allegations giving rise to Plaintiffs' Complaint stem from the purported placement of unsolicited telemarketing calls to millions of Plaintiffs' subscribers through the use of an autodialing mechanism and prerecorded messages.  Plaintiffs allege that Defendants "facilitated" the alleged unlawful calls by providing telephone numbers used to obscure the identities of the calling parties.  For the reasons that follow, the Court grants Defendants' motion to dismiss.

**I.     BACKGROUND**

Because the Court writes for the parties, the Court presumes the parties' familiarity with

the facts and procedural history and incorporates the procedural and factual background set forth in the Opinion issued by the Court on this date in connection with the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), in which Defendants joined.   In short, Plaintiffs allege that an illegal telemarketing scheme attempting to sell automobile warranties was perpetrated by three separate groups working together: "Caller Defendants," "Advertiser Defendants," and "Facilitator Defendants."   Pls. Memo. of law in Opp'n to Mot. to Dismiss at 4 (citing Compl. at ¶ 2).  Plaintiffs identify Defendants as the "Facilitator Defendants", asserting that they assisted the Caller Defendants and Advertiser Defendants in making millions of calls to Verizon Wireless and OnStar subscribers and Verizon Wireless employees in violation of federal statutes. Plaintiffs claim that Defendants supplied no fewer than twenty-two of the thirty-eight telephone numbers identified in the Complaint.  Id. at 2.  Plaintiffs allege that those twenty-two numbers were "used to facilitate at least 2,392,251 illegal Telemarketing calls, at least 329,725 of which were made to New Jersey area codes."  Id. at 2; Marx Cert., Ex. F (Rogers Cert. ¶ 40).

According to Plaintiffs, "[t]he TMC Defendants' role in the telemarketing scheme is to obtain ANIs[1] from non-party telecommunications service providers and to provide those ANIs to the Caller Defendants."  Id. at 5 (citing Compl. at ¶¶ 23-31).  In turn, Plaintiffs allege, the Caller Defendants use the ANIs to "obscure their identities from call recipients by rotating the ANIs constantly in direct contravention of the FTC's telemarketing rules."  Id. (citing Compl. at ¶¶ 29, 31).  Plaintiffs further allege that "[w]hen Verizon Wireless customers and employees have attempted to call back the ANIs that appear on their Caller IDs when they receive Telemarketing

---

[1]      "ANIs" are automatic number identifications that appear on a call recipient's caller ID equipment and were allegedly used by the Caller Defendants here to obscure the identities of both the Caller Defendants and the Advertiser Defendants, on whose behalf the alleged unlawful calls were made.

Calls, they have been unable to learn the identity of the caller, as they have received an automated message that the call was received 'in error' and directing them to press '1' to be removed from the call list." Id. (citing Compl. at ¶¶ 29-32).  Moreover, Plaintiffs assert that "[t]he TMC Defendants are aware of, or willfully blind to, the fact that the Caller Defendants' use of large numbers of ANIs is to conceal their identities from call recipients and to evade the consequences of illegal telemarketing." Id.  (citing Compl. at ¶ 31).  Additionally, Plaintiffs allege that "Joseph Johnson, an officer of Voice Solutions[,] testified in his deposition [that] TMC was aware of the Caller Defendants' involvement in illegal telemarketing." Id.  Lastly, Plaintiffs assert that "Verizon Wireless has repeatedly informed the TMC Defendants of illegal telemarketing campaigns and requested their cooperation in halting such calls; however, TMC has not cooperated." Id. (citing Compl. at ¶ 31; Marx. Cert. ¶¶ 3-6, Exs. B-D).

Defendants initially moved to dismiss Plaintiffs' claims against them for lack of personal jurisdiction on July 22, 2009.  On August 18, 2009, this Court denied that motion without prejudice, affording Defendants the opportunity to renew the motion after the completion of limited discovery directed to facts concerning jurisdiction.  Defendants now renew that motion, arguing that discovery has established that this forum lacks personal jurisdiction.  Specifically, TMC and TM Caller ID, which are both organized under the laws of the State of Oregon and maintain their principal places of business in Oregon, contend that they have had little if no contact with the State of New Jersey such that this Court can exercise personal jurisdiction over them.  Alternatively, Defendants contend that even if this Court finds that it has personal jurisdiction, the proper venue is Oregon rather than New Jersey.

## II.    DISCUSSION

**A. Standard of Review**

The instant motion challenges this Court's personal jurisdiction over TMC and TM Caller ID.  "Once challenged, a plaintiff bears the burden of establishing personal jurisdiction."  Pro Sports Inc. v. West, 639 F. Supp. 2d 475, 478 (D.N.J. 2009) (citing General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (finding the plaintiff must demonstrate "[a] nexus between defendant, the forum, and the litigation.")). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable."  Krishanthi v. Rajarantnam, No. 09-5395 (DMC), 2010 WL 3429529 (D.N.J. Aug,. 26, 2010) (citations omitted) (quoting Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F.Supp.2d 629, 633 (D.N.J. 2004)).   "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.2004); See also Carteret Say. Bank, FA v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir. 1992). "If the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1067.6 (3d ed. 2002).

"Pursuant to Federal Rule of Civil Procedure 4(e), federal 'district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits.'" Rothstein v. Harstad, No. 10-1421 (WHW), 2010 WL 3259789, * 1 (D.N.J. Aug. 17, 2010) (quoting Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 31 (3d Cir. 1993)).  "New Jersey's long-arm statute provides for jurisdiction coextensive

with the due process requirements of the United States Constitution." <u>Miller Yacht Sales</u>, 384

F.3d at 96 (citing N.J. Court Rule 4:4-4(c)); <u>Charles Gendler & Co. v. Telecom Equip. Corp.</u>,

102 N.J. 460 (1986)).  Accordingly, "parties who have constitutionally sufficient 'minimum

contacts' with New Jersey are subject to suit there." <u>Id.</u> (citing <u>Carteret</u>, 954 F.2d at 96).

"[T]he due process analysis focuses on the non-resident defendant's 'minimum contacts'

with the forum." <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 334 (3d Cir. 2009)

(quoting <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474 (1985)).   Courts analyze whether

minimum contacts exist in terms of specific or general jurisdiction.  <u>Id.</u>; <u>see also</u>  <u>D'Jamoos v.</u>

<u>Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009) ("There are two types of personal

jurisdiction, general jurisdiction and specific jurisdiction . . . .").  The Third Circuit has explained

the distinction between general and specific jurisdiction as follows:

> A court may exercise general jurisdiction over a defendant where he
> or she has "continuous and systematic" contacts with the forum,
> whether or not those contacts are related to the plaintiff's cause of
> action.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S.
> 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); <u>BP Chems. Ltd. v.</u>
> <u>Formosa Chem. & Fibre Corp.</u>, 229 F.3d 254, 259 (3d Cir. 2000).
> Specific jurisdiction exists if the defendant has "'purposefully
> directed' his activities at residents of the forum and the litigation
> results from alleged injuries that 'arise out of or relate to' those
> activities." <u>Burger King Corp.</u>, 471 U.S. at 472, 105 S.Ct. 2174
> (internal citation omitted).  "If the defendant 'maintain[s] continuous
> and substantial forum affiliations,' then general jurisdiction exists.  If
> the defendant's contacts fall short of that standard, then at least one
> contact must give rise or relate to the plaintiff's claim." <u>O'Connor</u>,
> 496 F.3d at 321 (internal citation omitted).

<u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d at 334 (3d Cir. 2009).

**B.     Personal Jurisdiction**

Plaintiffs assert that New Jersey has both general and specific jurisdiction over the

Defendants.  In addressing the issue of jurisdiction, Plaintiffs assert that there is little distinction between TCM and TM Caller ID and in connection with their opposition to the instant motion, refer to those entities interchangeably as "the TMC Defendants."  According to Plaintiffs, discovery has revealed that TCM and TM Caller ID are "alter egos for the purposes of jurisdiction."  Plaintiffs explain that the entities have common owners: Fred Accuardi and Bob Rengo, sharing equal ownership in TMC, and TMC as the sole member of TM Caller ID. According to Plaintiffs, when Accuardi and Rengo formed TM Caller ID, they attempted to have TMC clients execute new contracts with TM Caller ID.  Plaintiffs claim that some clients of TMC did not execute new contracts, but that TMC took no further steps to formally transition clients from TMC to TM Caller ID.  Pls. Memo. of law in Opp'n to Mot. to Dismiss at 9-10 (citing Marx Cert., ¶ 10; Ex. H (Accuardi Dep. Tr., at 108:4 - 108:17)).  Plaintiffs assert that the two entities have the same physical location in Portland, Oregon, share employees and a single telephone number and often use common letterhead.  Id. at 10 (citing Accuardi Dep. Tr. at 108:18 - 108:20; 112:7 - 113:30; 172:19 - 173:12; 37:12 - 41:7).

With regard to the entities' contacts with New Jersey, Plaintiffs assert that TMC has affirmatively solicited business in the State of New Jersey over the course of the last twenty-eight years.  Plaintiffs point to the testimony of Fred Accuardi, President and 50 percent owner of TMC, wherein he admitted to traveling to the State of New Jersey on behalf of TMC to make "sales calls" to potential New Jersey customers as early as 1982.  Accuardi Dep. Tr. at 65:17 - 66:9.  Further, Plaintiffs point to the testimony of Kevin Meyerhoff, in which he indicated that he acted as a "sub-agent" to TMC beginning in 2006 through an Atlanta-based agency that had an agreement with TMC.  As a sub-agent, Myerhoff worked directly with the Atlanta-based agency,

but introduced contacts, including New Jersey-based companies, to the TMC Defendants. Meyerhoff Dep. Tr. at 26:12 - 27:10. It does not appear that any business was generated through those contacts. TMC ultimately asked Meyerhoff to act as a direct agent, however, entering into an Agent Agreement on July 31, 2007, which provided that Meyerhoff and his New Jersey Company, Return on Investment, Inc. ("ROI") would offer the services of TMC. Marx Cert., ¶ 13, Ex. K. Myerhoff ultimately brokered a contract between TMC and McAfee. Meyerhoff also met with representatives of Barclays Bank in New Jersey which ultimately led to an agreement between Barclays and TMC. Meyerhoff had a number of meetings with Merck representatives in Whitehouse Station, New Jersey, during at least two of which Bob Rengo and another TMC employee participated by phone, which resulted in the execution of a non-disclosure agreement, but which did not ultimately generate any business for TMC. Finally, Plaintiffs contend that TMC currently appears to have as many as ten agents actively soliciting business on its behalf, but that Accuardi was unable to testify as to whether those agents were actively soliciting New Jersey business.[2]

Plaintiffs contend that the foregoing facts demonstrate that TMC, and TM Caller ID by virtue of its status as TMC's alter ego, have sufficient contacts with New Jersey such that they are subject to general jurisdiction in New Jersey. Plaintiffs assert that the appointment of an agent within the State of New Jersey, coupled with TCM's active participation by remote location in sales pitch meetings held in New Jersey alone establish general jurisdiction. Additionally, Plaintiffs point to Accuardi's testimony that at least fifteen other agent are actively engaged in soliciting business for TMC. Plaintiffs contend that, as Defendants' Rule 30(b)(6)

---

[2]       Accuardi explained that he is only aware of an agent's solicitation of business within a particular state if that solicitation ultimately results in a particular business deal. Accuardi Dep. Tr. at 168:12 - 169:6.

representative, Accuardi's inability to testify as to the New Jersey activities of those agents should be construed against Defendants and the Court may draw the inference that the agents are currently soliciting business within New Jersey and from New Jersey based companies.

Alternatively, Plaintiffs assert that this Court has specific jurisdiction over Defendants premised on Defendants having "admittedly supplied at least twenty-two ANIs that facilitated the making of at least 2,392,251 illegal Telemarketing Calls, at least 329,725 of which were made to New Jersey area codes." Memo. of law in Opp'n to Mot. to Dismiss at 20 (citing Marx Cert., Ex. F (Rogers Cert., ¶ 40)). Even in the absence of a defendant's physical presence in a state, Plaintiffs reason that courts commonly find specific jurisdiction based upon a defendant's injection of goods into the stream of commerce. See Memo. of Law in Opp'n to Mot. to Dismiss at 20-21 (citing Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987); Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 203 (3d Cir. 1998); A.V. Imports, Inc. v. Col De Fratta, SPA, 171 F.Supp.2d 369 (D.N.J. 2001); United Linen Wholesale, LLC v. Northwest Co., 2007 WL 2156353 (D.N.J. Jul. 26, 2007); Padcom, Inc. v. NetMotion Wireless, Inc., 2004 WL 1192641, * 6 (D.Del. May 24, 2004)).

Plaintiffs argue that specific jurisdiction may also be premised on the fact that the Defendants advertise their services on the Internet through websites and, therefore, have at the very least solicited business on a national, if not worldwide, basis including New Jersey. Plaintiffs concede that there are no facts in the record which establish the extent to which Defendants are doing business through their websites. However, citing Toys "R" Us, Inc., v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003), Plaintiffs contend that the Court "may appropriately consider a defendant's related non-internet activities" in assessing purposeful

availment.  Plaintiffs thus point to the agency agreement that TMC entered into with Meyerhoff for the purposes of soliciting New Jersey business, arguing that such conduct constitutes the "something more" required beyond the posting of a passive website to demonstrate that Defendants have purposely availed themselves of New Jersey courts.

Finally, in an effort to establish a *prima facie* case of specific jurisdiction, Plaintiffs cite to the "effects test" of <u>Calder v. Jones</u>, 465 U.S. 783, 104 S.Ct. 1482 (1984).  Applying the three-part test elucidated by the Third Circuit in <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 265-66 (3d Cir. 1998), Plaintiffs contend that (i) Defendants engaged in tortious conduct; (ii) the brunt of the harm has been suffered by Verizon Wireless in New Jersey; and (iii) New Jersey is the focal point of the tortious activity in that substantial resources have been expended by Verizon Wireless in New Jersey in addressing the damage caused by Defendants' tortious activity.

Defendants contest numerous factual allegations upon which Plaintiffs rely in support of personal jurisdiction.  First, Defendants refute Plaintiff's characterization of TMC and TM Caller ID as alter egos, asserting that the entities carry out separate and distinct operations.  Plaintiffs explain that TMC and TM Caller ID "have about five employees total between them," but that they have entirely different business models.  Accaurdi Cert. at ¶ 4.  According to Defendants, TM Caller ID is in the business of providing ANIs to client companies, which use those ANIs to display identifiable information about them when placing calls.  Accaurdi Cert. at ¶ 5. Defendants explain that clients may use one ANI when placing a call on behalf of one organization and then use a different ANI when placing a call on behalf of a different organization.  <u>Id.</u>  With each call, the recipient of the call is able to review identifiable information about the caller.  <u>Id.</u>  Defendants contend that TM Caller ID has had no contracts

with any person or entity located in the State of New Jersey and that none of its activities are otherwise directed at New Jersey.  Accuardi Cert. at ¶ 7.  Moreover, Defendants contend that none of the other defendants in this litigation are clients of TM Caller ID.  Id.  Defendants counter that there is no support in the record for Plaintiffs' assertion that TM Caller ID provided the ANI's to the Caller Defendants.  Defendants refute Plaintiff's assertion that twenty-two of the thirty-eight ANIs associated with the telemarketing calls at issue were provided by TM Caller ID, citing to the deposition testimony of Plaintiff's own investigator who conceded that third parties may "spoof" a caller identification number associated with TMC Caller ID, as they are widely available to the public.  Reply Br. at 2 (citing Lord Supp. Cert., Ex. A at T40 - T44).  Defendants explain that "spoofing" can occur without any involvement from Defendants at all, when a call gets placed using a particular ANI and the call did not actually originate from that particular ANI. Finally, Defendants take issue with Plaintiffs' assertion that Defendants' counsel stipulated that they provided the ANIs used to place the calls to New Jersey residents, noting that such stipulation was explicitly withdrawn only seconds after it was made during Accurdi's deposition on October 22, 2009.

Defendants describe TMC as a provider of consulting services directed toward clients endeavoring to achieve savings in their telecommunications costs.  Accuardi Cert. at ¶ 3. Defendants contend that TMC's only contact with New Jersey has been to enter into a July 31, 2007 agreement with Return on Investment, Inc. ("ROI"), pursuant to which ROI agreed to procure client contracts on behalf of TMC for the provision of consulting services, completely unrelated to the automobile warranty calling activities alleged in this litigation. Because TMC has limited resources and such minimal contacts in New Jersey, Defendants assert that TMC

10

insisted that the 2007 agreement included a forum selection clause requiring that any dispute between the parties be resolved in Oregon, using Oregon law.  According to Defendants, ROI solicited somewhere between five and ten prospective clients for TMC, which generated revenues of $2500, amounting to less than one percent of TMC's total revenues in 2009. Accuardi Cert. at ¶ 8.  Defendants also concede that TMC entered into a month-to-month agreement with another New Jersey based entity, EPI Inc. ("EPI"), in September 2008, which was terminated in 2009 and resulted in only $2500 in revenue to TMC, amounting to less than one percent of TMC's revenues in 2008.  Like the ROI agreement, the EPI agreement also called for the application of Oregon law.

Based on the foregoing evidence in the record, the Court finds that Plaintiffs have failed to sustain their burden.  The Court is cognizant of the fact that plaintiffs need only make a *prima facie* showing of the basis for personal jurisdiction.  See <u>Miller Yacht Sales, Inc.</u>, 384 F.3d at 97. However, Plaintiffs have failed to establish the minimum contacts necessary to demonstrate that Defendants are amenable to the jurisdiction of the New Jersey courts under either general or specific jurisdiction.

The Court turns first to Plaintiffs' assertion of general jurisdiction.  As previously noted, general jurisdiction over non-forum related claims is proper if the defendant has engaged in "continuous and systematic" activities in the State.  <u>Helicopteros Nacionales de Colombia, S.A.</u>, 466 U.S. at 416.  It is undisputed that TM Caller ID has had no contacts with the State of New Jersey.  Rather, Plaintiffs' claim of general jurisdiction is premised on those contacts that TMC has had in connection with its solicitation of business in New Jersey.  A finding of general jurisdiction over both TMC and TM Caller ID necessarily rests upon this Court's acceptance of

11

Plaintiffs' theory that the companies acted as alter egos of one another.  The Court need not resolve the issue of whether TM Caller ID is an alter ego of TMC, however, because Plaintiffs have failed to establish a *prima facie* case of general jurisdiction in connection with TMC's New Jersey contacts.

TMC's contacts with New Jersey can be distilled to: (1) less than five trips made by Accuardi to the State of New Jersey in an effort to solicit business over the course of TMC's twenty-eight year history; (2) TMC's engagement of a New Jersey agent, which generated revenues from services provided to New Jersey companies, amounting to less than one percent of the company's total revenues; (3) remote participation *via* telephone by TMC members/employees in a limited number of sales meetings which took place in New Jersey. Those contacts simply do not rise to the level of systematic and continuous activity to qualify as general jurisdiction for the purposes of establishing personal jurisdiction.  The Court is likewise not persuaded by Plaintiffs' assertion that they are entitled to an inference based on the failure of Defendants' 30(b)(6) witness to provide information as to the fifteen or so other agents employed by TMC.  The Court finds nothing improper in Accuardi's testimony that he is only apprised of the agents' contacts once a particular business deal is brokered.  Clearly Defendants' contacts with the State of New Jersey are not a substantial or central part of its business such that Defendants could anticipate being haled into a New Jersey Court under any cause of action.

Again, reviewing the facts in the light most favorable to Plaintiffs, the Court similarly finds that Plaintiffs have failed to identify contacts sufficient to establish specific jurisdiction. Courts undertake a three-part inquiry in assessing whether there is specific jurisdiction. D'Jamoos v. Pilatus Aircraft LTD, 566 F.3d at 102.  As the Third Circuit has explained

> First, the defendant must have "purposefully direct [its] activities" at the forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted).  Second, the litigation must "arise out of or relate to" at least one of those activities.  Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872; O'Connor, 496 F.3d at 317.  And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting [International Shoe v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160 (1945))].

 D'Jamoos v. Pilatus Aircraft LTD, 566 F.3d at 102.

Plaintiffs fail to make it past even the first part of the three-part test.  Even if this Court accepts Plaintiffs' allegation that twenty-two of the numbers identified in the Complaint were supplied by Defendants and not "spoofed" as Defendants suggest, there is absolutely no evidence in the record that Defendants provided these numbers to any of the other defendants identified in the litigation.  As Defendants point out, TM Caller ID lacks ties to any of the named defendants, is not a party to any contract with any New Jersey person or entity and does not direct any of its business activities towards New Jersey.  Moreover, to the extent that Plaintiffs rely on TMC's "contacts" with New Jersey, it is undisputed that TMC's minimal contacts with New Jersey involved TMC's telecommunications billing consulting business and have absolutely no connection to the instant litigation, such that this Court could find that Plaintiffs have satisfied the second inquiry required for a finding of specific jurisdiction.

Additionally, the Court rejects Plaintiffs' assertion that it is enough that Defendants placed the ANIs into the stream of commerce.  "Courts have relied on the stream-of-commerce theory to find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the

so-called 'stream of commerce.'" D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d at 104-05 (quoting

Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d at 203; Max Daetwyler Corp. v. R. Meyer,

762 F.2d 290, 298-300 (3d Cir. 1985)).   However, "'the mere foreseeability that a product one

sells may end up in the forum state' does not render the seller amenable to suit in the forum

state." Pennzoil Prods., 149 F.3d at 203 (quoting Renner v. Lanard Toys Ltd., 33 F.3d 277, 279

(3d Cir. 1994)).  To find jurisdiction on this basis, requires a finding of "some act by which the

defendant purposely avail[ed] itself of the privilege of conducting business within the forum

State, thus invoking the protection and benefits of its laws."  Id. (quoting Hanson v. Denckla, 357

U.S. 235, 253 (1958)).  As discussed at length, other than very minimal solicitation by TCM

involving its consulting business, there is no evidence in the record of purposeful availment by

Defendants.  As Defendants point out, the D.C. Circuit considered a very similar argument in the

context of litigation involving junk faxes purportedly sent in violation of the Telephone

Consumer Protection Act, and rejected application of the stream of commerce doctrine against a

defendant alleged to have facilitated the junk fax campaign, holding as follows:

> Anzaroot's role in the faxing operation resembles that of the
> car dealer in World Wide Volkswagen.  Anzaroot assisted in
> providing the phone lines, but ultimately – according to
> plaintiffs' own allegations – it was Fax.com, not Anzaroot,
> that selected the locations to receive faxes, maintained the
> database of phone numbers, and initiated the fax
> transmissions.  Although it may have been foreseeable to
> Anzaroot that residents of Washington, D.C., could receive
> faxes via the infrastructure he provided, that alone is not
> sufficient to show that he purposefully availed himself of the
> privilege of conducting activities in the District of Columbia.
> Also, like the defendant in World Wide Volkswagen,
> Anzaroot's only contact with the forum was through another
> party – in this case Fax.com.

14

Kopff v. Battaglia, 425 F.Supp. 2d 76, 87-88 (D.D.C. 2006).  Here, where there is no evidence in the record that Defendants had any dealings whatsoever with the named defendants who placed or otherwise arranged for the calls to be made to New Jersey residents, a finding of no purposeful availment is even more compelling.

Moreover, evidence that Defendants maintain a website is insufficient to form the basis for a finding of specific jurisdiction.  As Defendants point out, a court must find something beyond the mere posting of a website to find that a defendant has purposefully availed itself of the forum state.  In Toys "R" Us, Inc., 318 F.3d at 453, the Third Circuit explained that "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."   Discovery has revealed no such conduct on the part of Defendants as Defendants have submitted affidavits establishing that no business is transacted on its websites, much less directed at New Jersey.  Plaintiffs have therefore failed to satisfy the purposeful availment requirement.

Finally, the Court finds no merit to Plaintiffs attempts to apply the "effects test" of Calder v. Jones, 465 U.S. 783.  The "effects test" requires that (i) defendant commit an intentional tort; (ii) the focal point of the harm is felt in the subject forum; and (iii) defendant expressly aim its tortious conduct at the forum state such that the forum is the "focal point" of the tortious activity. IMO Industries, Inc. v. Kiekert AG, 155 F.3d at 265-66.   Setting aside Defendants' argument that Plaintiffs have failed to allege that they engaged in any intentional tort, the effects test

clearly has no applicability here were there is no evidence that Defendants aimed any of their conduct at New Jersey.

In light of the Court's dismissal of the claims against Defendants on the grounds that it lacks personal jurisdiction, the Court need not address Defendants' claim that New Jersey is an improper venue for this litigation.

**III.     CONCLUSION**

For the foregoing reasons, Defendants motion to dismiss is GRANTED.

Dated: September 17, 2010

     /s/   Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.