## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| CELLCO PARTNERSHIP d/b/a VERIZON : | | |
| WIRELESS and ONSTAR, LLC, : | Civil Action No.: 09-1814 (FLW) | |
| : | | |
| Plaintiffs, : | **OPINION** | |
| : | | |
| v. : | | |
| : | | |
| DEALERS WARRANTY, LLC, _et al_., : | | |
| : | | |
| Defendants. : | | |
| _____ : | | |

    This matter comes before the Court on a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure brought by defendants Dealers Preferred Warranties, LLC, Direct Protect Warranty and National Dealers Warranty, Inc., joined by defendants Telephone Management Corporation, TMC Caller ID, LLC, Dealers Warranty, LLC and Dealers Warranty Services, LLC (collectively, "Defendants").[1]  The allegations giving rise to the instant complaint stem from the purported placement of unsolicited telemarketing calls offering to sell extended auto warranties to millions of subscribers of plaintiffs Cellco Partnership d/b/a Verizon Wireless and OnStar, LLC ("Plaintiffs"), through the use of an autodialing mechanism and prerecorded messages.  Plaintiffs assert claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.A. § 227, _et seq_. and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C.A. § 6101 _et seq_.  This Court held oral argument on July 29, 2010, and reserved decision.  Having considered the arguments presented by counsel on July 29, 2010, as well as the supplemental submissions of the

---

[1]    Defendants Telephone Management Corporation and TMC Caller ID also moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, which motion was granted by the Court on this date by separate Opinion and Order.

parties, Defendants' motion to dismiss is GRANTED with a limited right for Plaintiffs to re-plead claims consistent with this Opinion.

## I.      Procedural Background

On April 16, 2009, Plaintiffs filed suit against defendants Dealers Warranty, National Dealers Warranty, Inc. and Tele Europe B.V. and various entities associated with seven (7) telephone numbers from which auto warranty telemarketing calls originated.  Plaintiffs sought both damages and injunctive relief.  On May 19, 2009, Dealers Warranty entered into a permanent injunction on consent wherein it agreed to cease "directly or indirectly making any calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to the cellular telephone of a Verizon Wireless customer or having such calls made on behalf of Dealers Warranty."  National Dealers Warranty entered into a similar permanent injunction on May 21, 2009.  Default has been entered against defendant TeleEurope B.V.

Plaintiffs filed a First Amended Complaint on June 15, 2009, naming additional defendants Dealers Preferred Warranties, Dealer Warranty Services, LLC, Direct Protect Warranty d/b/a Warranty Services and Telephone Management Corporation, TM Caller ID, LLC, as well as entities associated with thirty-one additional telephone numbers from which auto warranty Telemarketing Calls had been received.  On July 20, 2009, preliminary injunctions on consent were entered as to Dealers Preferred Warranties and Direct Protect.  Thereafter, on August 18, 2009, an interim preliminary injunction was issued as to Telephone Management Corporation and TM Caller ID.

On March 1, 2010, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Subsequently,  Plaintiffs were granted leave to file a second amended complaint and, on

June 15, 2010, filed the Second Amended Complaint asserting diversity jurisdiction under 28

U.S.C. § 1332 as an additional basis for this Court's subject matter jurisdiction.  Thereafter,

Defendants renewed their motion to dismiss the remaining counts of the Second Amended

Complaint.  See Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC, 417

F.Supp.2d 632, 642 n.15 (D.N.J. 2006) (quoting 6 Charles A. Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice and Procedure § 1476 (2005)("[A] defendant 'should not be required

to file a new motion to dismiss simply because an amended pleading was introduced while their

motion was pending.' Rather, '[i]f some of the defects raised in the original motion remain in the

new pleading, the court simply may consider the motion as being addressed to the amended

pleading.'" (internal citations omitted)).

## II.    Factual Background

In the Second Amended Complaint, Plaintiffs alleged that beginning in October 2008,

Defendants, or those acting on their behalf made more than 8 million unsolicited telemarketing

calls to Verizon wireless subscribers, and over 400,000 unsolicited telemarketing calls to OnStar

subscribers, through the apparent use of an autodialing mechanism and a prerecorded message,

offering to sell an extended auto warranty in contravention of the TCPA (Count I), the TCFAPA

(Counts II and III), and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-130

(Count IV).[1]  Second Am. Compl. at ¶ 1.  However, immediately prior to oral argument on the

---

[1]     Plaintiffs' initial Complaint and First Amended Complaint also raised claims for Invasion
of Privacy, which have since been abandoned by Plaintiffs in their Second Amended Complaint.
Accordingly, while Defendants assert that they are "entitled" to an Order dismissing such claims
with prejudice, such Order will not be entered as those claims are no longer before the Court.
See Snyder v. Pascack Valley Hospital, 303 F.3d 271, 276 (3d cir. 2002) ("An amended
complaint supercedes the original version in providing the blueprint for the future course of a
lawsuit.").  Defendants are, however, entitled to an Order dismissing with prejudice Plaintiffs'

instant motion, Plaintiffs informed the Court that they were withdrawing their NJCFA claims. Accordingly, the only claims remaining are those under the TCPA and the TCFAPA.

Plaintiffs classify Defendants as falling within three categories: (i) "Caller Defendants," (ii) "Advertiser Defendants," and (iii) "Facilitator Defendants." Id. at ¶ 2. Plaintiffs allege that entities from each of the three identified categories acted in concert to originate the telemarketing calls and to use various methods either to conceal or fail to disclose information to consumers regarding the source of the calls. Id. Plaintiffs identify the Caller Defendants as including Voice Touch, Inc. and TeleEurope B.V., as well as other yet unknown entities, and allege that these Caller Defendants physically placed calls to consumers on behalf of the Advertiser Defendants using automatic telephone dialing systems and recorded voice messages. Second Am. Compl. at ¶ 3. Additionally, Plaintiffs allege that if a customer expressed interest in response to an automated call, the customer was then connected to a representative of the Advertiser Defendants. Id. Moreover, Plaintiffs allege that in some cases, the Caller Defendants, acting in concert with the Facilitator Defendants, employed methods of concealing or disguising the telephone numbers from which the calls were placed and/or the Caller Defendants' and Advertise Defendants' identities so that neither the telephone number nor the identity of the caller appeared on the consumer's caller ID. Id.

Plaintiffs define the Advertiser Defendants to include Transcontinental Warranty, Inc., Dealer Warranty Services, Inc., Direct Protect Warranty, Dealers Preferred Warranties, LLC, Dealers Warranty, LLC and National Dealers Warranty, Inc. Second Am. Compl. at ¶ 4. According to Plaintiffs, the Advertiser Defendants employed the Caller Defendants to make the

_____

NJCFA claims, as those were pled in the Second Amended Complaint.

telemarketing calls on their behalf, in order to sell automobile warranties to recipients of the calls.  Id.

The Facilitator Defendants are identified by Plaintiffs as Telephone Management Corporation and TM Caller ID, LLC.  Second Am. Compl. at ¶ 5.  Plaintiffs allege that these Facilitator Defendants enabled the Caller Defendants to make the telemarketing calls by providing the telephone numbers that the Caller Defendants can have appear as the caller ID when a customer receives a telemarketing call.  Id.  According to Plaintiffs, the Caller Defendants used these caller ID's – and the ability to change these caller ID's on an almost daily basis – to obscure their identity as well as the identities of the parties on whose behalf the calls were being made.  Id.

As evidence of the unlawful practices of the Defendants, Plaintiffs provide numerous examples of instances in which Verizon Wireless employees received automated messages seeking to sell them auto warranties from various telephone numbers, which they contend were assigned by various carriers for the purposes of placing the calls and concealing their identities. Second Am. Compl. at ¶¶ 24-83.  In short, Plaintiffs contend that Defendants used a variety of means and techniques to perpetrate their unlawful scheme, including automatic and predictive dialing equipment, prerecorded voice messages and sophisticated techniques purposely designed to conceal their identities from the call recipients.  See Id. at ¶ 1.

### III.    *Standard of Review*

As previously noted, the instant motion to dismiss is premised on both Rules 12(b)(6), for failure to state a claim, and 12(b)(1), for lack of subject matter jurisdiction.  "When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as

other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed."  Wyeth and Cordis Corporation v. Abbott Laboratories, No. 08-0230 (JAP), 2008 WL 2036805, * 2 (D.N.J. May 8, 2008) (quoting Pashun v. Modero, No. 92-3620, 1993 WL 185323 (D.N.J. May 26, 1993)).  Accordingly, the Court turns first to Defendants' contention that this Court lacks subject matter jurisdiction over the instant action.

A party may move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) based on lack of subject matter jurisdiction.  The burden is on the plaintiff to prove that subject matter jurisdiction exists.  Wyeth and Cordis Corporation v. Abbott Laboratories, 2008 WL 2036805, at * 2.  "In Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977), the Third Circuit . . . . divided Rule 12(b)(1) motions into two categories:  facial and factual."  International Development Corporation v. Richmond, No. 09-2495(GEB), 2009 WL 3818141, at * 2 (D.N.J. Nov. 13, 2009).  "A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction."  Id.  Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff."  Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

In contrast, when the court considers a factual attack on jurisdiction under 12(b)(1), ". . . the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d at 891.  No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter

jurisdiction.  Id.  Should factual issues arise regarding subject matter jurisdiction, the court may

consider exhibits outside the pleadings.  Gould Electronics, 220 F.3d at 178.  "In general, when a

Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the

Defendant's challenge as a factual attack on jurisdiction."  International Development

Corporation v. Richmond, 2009 WL 3818141, at * 2 (quoting Med. Soc'y of N.J. v. Herr, 191

F.Supp.2d 574, 578 (D.N.J. 2002)).  Here, where the factual allegations in the Second Amended

Complaint are insufficient to permit the Court to ascertain whether the Plaintiffs have standing to

assert the statutory claims alleged, and Plaintiffs have offered additional facts that, if permitted,

would be re-plead in a third amended complaint, the Court will treat the motion as a factual

attack on jurisdiction.

## IV.   _Discussion_

Defendants move to dismiss Plaintiffs' claims brought under the TCPA, 47 U.S.C.A. §

227, _et seq_. and the TCFAPA, 15 U.S.C.A. § 6101 _et seq_. on the grounds that Plaintiffs lack

standing in that they are not consumers entitled to seek redress under those statutory schemes.

Additionally, Defendants contend that even if Plaintiffs had standing to sue, they cannot

establish jurisdiction under either statutory scheme.  Defendants argue that the TCPA does not

support federal question jurisdiction because Congress intended to authorize private causes of

action _only_ in state courts.  Moreover, Defendants contend that Plaintiffs cannot satisfy the

amount-in-controversy requirement of § 6104(a) of the TCFAPA, which requires in excess of

$50,000 in actual damages.  Each of the foregoing alleged grounds for dismissal of Plaintiffs'

respective statutory claims will be discussed in turn.

### A. *Plaintiffs' Claims Under the TCPA (Count I)*

### 1. *Jurisdiction*

In their moving papers, Defendants argued that the TCPA does not support federal question jurisdiction because "Congress intended to authorize private causes of action [under the TCPA] *only* in state courts and to withhold federal jurisdiction."  Moving Br. at 5 (quoting Erienet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 516 (3d Cir. 1998) (emphasis added)). Plaintiffs countered that Defendants' reliance on Erienet, Inc., 156 F.3d 513, is misplaced here where there exists supplemental jurisdiction pursuant to 12 U.S.C. § 1367(a), given that the TCPA claim arises out of the same nucleus of operative facts as the TCFAPA.  Additionally, on June 10, 2010, subsequent to the filing of the instant motion, Plaintiffs were granted leave to file a Second Amended Complaint, which Plaintiffs argue moots the jurisdictional portion of Defendants' motion to dismiss.  According to Plaintiffs,

> it is well-settled that if there is complete diversity of citizenship between the parties, TCPA and NJCFA claims may be brought in federal court under the Court's diversity, rather than federal question, jurisdiction. See Gottlieb v. Carnival Corp., 436 F.3d 335, 341 (2d Cir. 2006) (holding that party may bring cause of action in federal court for violations of TCPA based on diversity jurisdiction); Baltimore-Washington Tel. Co. v. The Hot Leads Co., LLC, 584 F.Supp.2d 736, 741 (D.Md. 2008) ("Diversity is 'an independent basis for jurisdiction, regardless of whether the underlying claim is federal in nature.'"); Pacholec v. Home Depot U.S.A., Inc., 293 Fed.Appx. 939, 940, 2008 WL 4401397, at * 1 n.1 (3d Cir. 2008) (finding that, "[b]ecause the parties are sufficiently diverse, the District court had jurisdiction [over plaintiffs' NJCFA claims].").

June 15, 2010 Letter from Ian S. Marx, Esq. at 2.  Plaintiffs contend that prior to discovery, they were unable to definitively establish the citizenship of the Defendant entities, however, Plaintiffs

point out that the Second Amended Complaint now makes clear that there is complete diversity between Plaintiffs and Defendants.

In response to the filing of the Second Amended Complaint, Defendants asserted that the issue of whether TCPA claims may be brought in federal court based upon diversity jurisdiction is not as clearly resolved as Plaintiffs suggest.  Defendants pointed to the fact that neither the United States Supreme Court nor the Third Circuit have yet opined on whether diversity jurisdiction indeed provides a basis for subject matter jurisdiction under the TCPA.  Defendants argued, without citing any authority, that "[g]iven that the clear language and intent of the statute is to create a purely state cause of action, it can certainly be argued that the District and Circuit Courts that have found subject matter jurisdiction under the TCPA based on diversity are incorrect." June 17, 2010 Letter from Joseph Maddaloni, Jr., Esq. at 1.

The TCPA contains the following provision regarding private causes of action:

(3) Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State --

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed

> under this subsection, the court may, in its discretion,
> increase the amount of the award to an amount equal to
> not more than 3 times the amount available under
> subparagraph (B) of this paragraph.

47 U.S.C.A. § 227(b)(3).

In Erienet, Inc. v. Velocity Net, Inc., 156 F.3d 513 (3d Cir. 1998), the Third Circuit made clear that §227(b)(3) did not authorize a private cause of action in federal court based upon the federal question jurisdiction of § 1331.  The Third Circuit concluded that "because the TCPA reflects Congress' intent to authorize consumer suits in state courts only, and because it is 'a more specific statutory provision conferring exclusive jurisdiction elsewhere,' appellants cannot rely on the general federal question jurisdiction of § 1331."  Erienet, 156 F.3d at 519. The panel explained that the TCPA, which explicitly provides that litigants may bring TCPA claims in state court, reflects Congressional intent "to authorize private causes of action only in state courts, and to withhold federal jurisdiction."  Id. at 517.

At issue here, however, is whether a TCPA claim may be brought in federal court based upon diversity jurisdiction pursuant to § 1332.  The Erienet decision did not address this issue, and the Third Circuit has not considered whether the TCPA divests federal courts of diversity jurisdiction, although several other circuits have concluded that it does not.  See, e.g., Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 324 n. 6 (5th Cir. 2008);  US Fax Law Cntr., Inc. v. iHire, Inc., 476 F.3d 1112, 1118 (10th Cir. 2007) ("Because there is no express congressional intent to preempt diversity jurisdiction, and because the diversity jurisdiction statute and the TCPA are not irreconcilable, the district court erred in finding that Congress intended to preclude federal diversity jurisdiction over TCPA claims.");  Gottlieb v. Carnival Corp., 436

F.3d 335, 342 (2d Cir. 2006) (Sotomayor, J.) ("Having considered the statute's text, structure, history, and purpose, we conclude that Congress did not intend to divest the federal courts of diversity jurisdiction over private causes of action under the TCPA."); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450-51 (7th Cir. 2005).[2]   Additionally, district courts within this Circuit that have considered the issue have likewise determined that while the TCPA does not give rise to federal question jurisdiction, federal courts are not precluded from hearing TCPA cases founded upon diversity jurisdiction.  See, e.g., Goodrich Management Corp. v. Afgo Mechanical Services, Inc., No. 09-0043 (WJM), 2009 WL 2602200, * 4 (D.N.J. Aug. 24, 2009) ("Although the TCPA does not give rise to federal jurisdiction, this does not preclude a finding of diversity jurisdiction if the appropriate requirements [of § 1332] are met."); Landsman & Funk, P.C. v. Skinder-Strauss Associates, 636 F.Supp.2d 359, 364 (D.N.J. 2009) (recognizing that Erienet does not limit diversity-of-citizenship jurisdiction for TCPA actions); Bell v. Money Resource Corp., No. 08-639, 2009 WL 382478, * 2 (E.D.Pa. Feb. 13, 2009); Watson v. NCO Group, Inc., 462 F.Supp.2d 641, 647 (E.D.Pa. 2006) ("This Court is convinced that diversity of citizenship remains a viable means to establish subject matter jurisdiction over a TCPA claim.").

Other than their general assertion that there is no controlling precedent, Defendants have presented no arguments to undermine the reasoning of the numerous courts, including those

---

[2]      In holding that federal courts enjoy diversity jurisdiction over private causes of action arising under the TCPA, the Seventh Circuit actually broke ranks with Erienet, finding that the grant of authority to the state courts in § 227(b)(3) was not meant to be exclusive.  To support that conclusion, the panel cited a separate provision of the statute that explicitly provides for exclusive federal jurisdiction when a state brings a suit for repeated violations of the Act.  Brill, 427 F.3d at 451 (noting that "[t]he contrast between 227(f)(2) and 227(b)(3) is baffling unless one provides exclusivity and the other doesn't.").  Following Brill, courts within the District of New Jersey have, of course, "continued to follow Erienet precedent in finding that 'suits brought under the TCPA cannot be filed in or removed to federal court based on federal question jurisdiction.'" Landsman & Funk, P.C. v. Skinder-Strauss Associates, 636 F.Supp.2d 359, 363 (D.N.J. 2009).

within this District, that have indeed recognized that a TCPA claim may be brought in federal

court based upon diversity jurisdiction.  Accordingly, since neither Erienet, nor the language of

§ 227(b)(3) precludes a finding of diversity jurisdiction if the requirements of § 1332 are met,

as this Court noted during oral argument on the instant motion, Plaintiffs' TCPA claims may

indeed be brought in this Court based upon diversity jurisdiction.

      With respect to the requirements of § 1332, Defendants do not dispute that Plaintiffs

have satisfied the diversity of citizenship requirement, but instead, Defendants contend that

Plaintiffs have failed to properly allege the amount in controversy.   In their papers filed in

opposition to the instant motion, Plaintiffs argued that the Second Amended Complaint indeed

establishes facts showing that the amount in controversy exceeds $75,000.00.  Plaintiffs pointed

to Paragraphs 1, 47 and 87 of the Second Amended Complaint, wherein they allege that

Defendants made or caused to be made at least 15,804 telemarketing calls to Verizon Wireless

concession accounts and at least 400,000 telemarketing calls to OnStar numbers.  Plaintiffs

reasoned that because  47 U.S.C. § 227(b)(3) permits recovery of the greater of actual monetary

losses or $500 in damages for each violation, the amount in controversy with respect to the

claims by Verizon Wireless exceeds $7 million (comprised of the $500 statutory damage award

for each of the 15,804 calls to concession accounts) and the amount in controversy with respect

to OnStar's claims exceeds $200 million (comprised of the $500 statutory damage award for

each of the 400,000 telemarketing calls made to OnStar numbers).  Additionally, Plaintiffs

claimed actual damages suffered by Verizon and OnStar greatly exceed $75,000.   In further

support of their claims of actual damages, Plaintiffs submitted the certifications of Kristin

Saling, Associate Director of Quality Assurance for Verizon Wireless, and Yvette Thibodeaux, Director of Sales Operations for Verizon Wireless.[3]

At oral argument, Defendants countered that Plaintiffs have improperly aggregated their claims against the Defendants and, in doing so, have failed to satisfy the amount in controversy requirement of § 1332.  Citing  Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), Defendants argued that separate and distinct claims cannot be aggregated by multiple plaintiffs against multiple defendants who are not jointly liable to establish jurisdiction.  Indeed, in Snyder, the Supreme Court recognized

> The doctrine that separate and distinct claims could not be aggregated.. . . is based . . . upon [the] Court's interpretation of the statutory phrase 'matter in controversy.'  The interpretation of this phrase as precluding aggregation substantially predates the 1938 Federal Rules of Civil Procedure.  In 1911 this Court said in Troy Bank v. Whitehead & Co.: "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount."

394 U.S. at 336 (quoting Troy Bank v. Whitehead & Co., 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81 (1911)).

Plaintiffs conceded during oral argument that they are precluded from aggregating their claims in order to satisfy the amount in controversy requirement of § 1332, and sought the indulgence of the Court to re-plead, in a third amended complaint, separate allegations as to

---

[3]        Defendants take issue with Plaintiffs' reliance on the Saling and Thibodeaux Certifications, asserting that they should not be considered, as they address issues not raised in the Complaint.  Additionally, Defendants argue that the Certifications may not be considered as "evidence" of anything as they are not based on personal knowledge. Defendants assert that the Certifications are based on hearsay and information for which there is no proper foundation.  Accordingly, without separate briefing, Defendants have filed a formal motion to strike these two Certifications.  Nevertheless, the Court need not address Defendants' motion to strike as reference to the actual damages set forth in the Certifications is unnecessary, as Plaintiffs have set forth statutory damages sufficient to satisfy § 1332, based upon the alleged calls made to the concession accounts and OnStar subscriber accounts, as referenced in the Second Amended Complaint.

how each Plaintiff exceeds the $75,000 threshold as to each defendant.  Rather than postponing argument on the merits of the motion, the Court permitted Plaintiffs, based on the allegations pled in the Second Amended Complaint,  to provide a representative example as to how the claims against a particular defendant met the statutory threshold.  Referencing paragraphs 36, 38 and 47 a. of the Second Amended Complaint, Plaintiffs explained that the 853 calls to Verizon Wireless concession accounts from the phone number (949)256-9145 were all attributable to defendant National Dealers Warranty.  Accordingly, Plaintiffs reasoned, the Second Amended Complaint establishes statutory damages against National Dealers Warranty in excess of $400,000 (comprised of the $500 statutory damage award for each of the 853 calls).

Taking the representations of Plaintiffs' counsel based on paragraphs 36, 38 and 47 a. of the Second Amended Complaint, Defendants indicated their willingness during oral argument to concede to jurisdiction, subject to Plaintiffs' repleading in conformity with the representations made by counsel on the record, in order to proceed to the merits of their pending motion.  Accordingly, the Court accepted Plaintiffs' jurisdictional representations for the purposes of the instant motion and found that there was diversity jurisdiction over the claims presented, however, Plaintiffs must re-plead these allegations consistent with their oral representations.

### 2.  *Statutory Standing*

This Court then turned its attention during oral argument to Defendants' contention that Plaintiffs lack standing to bring their claims under the TCPA.  "For a federal court to have subject-matter jurisdiction over an action, the plaintiff must have standing to bring the action in the first instance."  Music Sales Limited v. Charles Dumont & Son, Inc., No. 09-1443 (RMB),

2009 WL 3417446, * 2 (Oct. 19, 2009).  "There are three types of standing: constitutional, prudential, and statutory."  Id.  Here, the focus is on whether Plaintiffs' have statutory standing under the TCPA to bring their claims. "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury."  Graden v. Conexant Systems Inc., 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).

Defendants argue that nothing in the legislative history of the TCPA, or in the case law, suggests that Congress intended to create a private right of action for telecommunications vendors to bring claims on behalf of their subscribers.  Defendants point to the TCPA, which instructs the Federal Communications Commission (the "FCC") to promulgate regulations "concerning the need to protect *residential telephone subscribers' privacy rights* to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227 (c)(1) (emphasis added).  Defendants go on to point out that the legislative history of the TCPA makes it absolutely clear that it was enacted to "protect the privacy interests of *residential telephone subscribers* by placing restrictions on unsolicited, automated telephone calls to the home." S.Rep. No. 102-178 at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.  Defendants further point to the statement by the bill's sponsor, Senator Hollings, wherein Hollings stated that

> [t]he substitute bill contains a private right-of-action provision that will make it easier for *consumers* to recover damages from receiving these computerized calls.  The provisions would allow *consumers* to bring an action in State court against any entity that violates the bill . . . .  The consumer outrage at receiving these calls is clear.  Unless Congress makes it easier for *consumers* to obtain damages from those who violate this bill, these abuses will undoubtedly continue.

137 Cong. Rec.; S16205-06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) (emphasis added).

Defendants argue that if Plaintiffs are permitted to proceed with their claims, Defendants will either be subject to multiple claims and liability or Plaintiffs' subscribers who actually received the calls will be denied the right to recover the statutory penalty.  Citing Charvat v. GVN Michigan, 561 F.3d 623, 630 (6th Cir. 2009), wherein the Sixth Circuit held that "the TCPA limits damages to one award of damages per call," Defendants argue that if Verizon and OnStar are permitted to recover the statutory penalty under the TCPA, the customers who actually received the calls would be precluded from any statutory recovery. Alternatively, Defendants reason that even if the individual consumers were indeed permitted statutory recovery under the TCPA, regardless of any recovery by Plaintiffs, Defendants would be subjected to double liability which, Defendants argue, certainly cannot be what Congress intended.[3]

Plaintiffs take issue with Defendants' contention that Verizon Wireless and OnStar have no standing under the TCPA because they are not "consumers."  Plaintiffs point to the language of the TCPA, which they argue, does not limit TCPA claims to "consumers."  Specifically, Plaintiffs cite § 227(b)(1)(A)(iii) which provides

> It shall be unlawful for any person within the United States . . . to make
> any call (other than a call made for emergency purposes or made with
> the prior express consent of the called party) using any automatic

---

[3]     Defendants further argued that Plaintiffs may not assert claims on behalf of their subscribers, as those claims are not assignable and the well-established tenet of prudential standing prohibits Plaintiffs from asserting those claims.  The Court need not consider these arguments, however, as Plaintiffs have made clear that they do not seek to assert claims on behalf of their subscribers.  Rather, Plaintiffs have affirmatively represented that they seek to assert claims as aggrieved parties under the TCPA that have been directly harmed by the telemarketing calls.

> telephone dialing system or an artificial or prerecorded voice . . . to any
> telephone number assigned to a  . . .  cellular telephone service.

Opp'n Br. at 23 (quoting 47 U.S.C. § 227(b)(1)).  According to Plaintiffs, the foregoing statutory

language demonstrates that the focus of the TCPA is on various unlawful practices employed by

telemarketers and does not limit TCPA claims to "consumers."  Plaintiffs argue that the TCPA

permits a "person or entity" to bring an action based on a violation of the TCPA or its

implementing regulations to enjoin such action and/or "to recover for actual monetary loss from

such violation, or to receive $500 in damages for each such violation, whichever is greater."

Opp'n Br. at 23 (quoting 47 U.S.C. § 227(b)(3)).

Prudent statutory interpretation requires that the Court first look to the plain language of

the statute, and if the statute's meaning is clear on its face, then the Court need not inquire

further.  See BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338

(2004) (noting that because "[t]he preeminent canon of statutory interpretation requires us to

presume that the legislature says in a statute what it means and means in a statute what it says

there", the "inquiry begins with the statutory text, and ends there as well if the text is

unambiguous.") (internal citations and quotations omitted).  "Where the statutory language is

unambiguous, the court should not consider statutory purpose or legislative history."  Parker v.

Nutrisystem, --- F.3d ---, 2010 WL 3465054, * 3 (3d Cir. Sept. 7, 2010).

"In determining whether language is unambiguous, we 'read the statute in its ordinary and

natural sense.'"  Id. (quoting Harvard Secured Creditors Liquidation Trust v. I.R.S., 568 F.3d 444,

451 (3d Cir. 2009)).  "A provision is ambiguous only where the disputed language is 'reasonably

susceptible of different interpretations.'"  Id. (quoting Dobrek v. Phelan, 419 F.3d 259, 264 (3d

Cir. 2005)).  The Court "must examine 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" <u>Rosenberg v. XM Ventures</u>, 274 F.3d 137, 141 (3d Cir. 2001) (quoting <u>Marshak v. Treadwell</u>, 240 F.3d 184, 192-93 (3d Cir. 2001)).  Here, while § 227(b)(3), provides a private right of action "to a person or entity", Congress made clear in subsections (A) and (B), that the private right of action must be based on a violation of the TCPA.  Accordingly, reference to the subsection under which Plaintiffs assert their TCPA claims, § 227(b)(1), is necessary in order to determine whether Plaintiffs qualify as entities that have standing to assert claims under § 227(b)(3).  <u>See</u> <u>Newmark v. Principi</u>, 283 F.3d 172, 176 (3d Cir. 2002) ("It is incumbent upon courts to read each statutory provision as having meaning, and to construe the statute so the 'meaning of each word inform[s] the others and all in their aggregate tak[e] their purport from the setting in which they are used.'") (quoting <u>United States National Bank of Oregon v. Indep. Ins. Agents of Am.</u>, 508 U.S. 439, 454, 113 S.Ct. 2173, 124 L.Ed. 402 (1993)).

Plaintiffs' TCPA claims are grounded in § 227(b)(1)(A)(iii), which makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice  . . . to any telephone number assigned to a . . . cellular telephone service . . . ."  Plaintiffs are therefore correct in their assertion that under the express language of the TCPA, the question of standing turns on whether the claimant can establish a violation under the TCPA and not on whether it is a "consumer".  However, closer examination of the statutory scheme reveals that the TCPA cannot be construed as broadly as Plaintiffs suggest.  By its terms,  § 227(b)(1)(A)(iii) provides an exception for calls made for emergency purposes or made with the

prior express consent of the called party.  Accordingly, the only logical reading of §

227(b)(1)(A)(iii) is one that would require the party asserting the claim to be the party to whom

the call is directed.  Any other reading, would render the exception for calls "made with the prior

express consent of the called party" a nullity.

 While this Court did not uncover, nor do the parties point to, any case law in this Circuit

addressing the issue of who has standing to assert a claim under the TCPA, recently in <u>Leyse v.

Bank of America</u>, No. 09-7654(JGK), 2010 WL 2382400, *4 (S.D.N.Y. Jun. 14, 2010), a court

within the Southern District of New York examined § 227(b) to ascertain whether a defendant's

alleged violation was indeed an invasion of the plaintiff's legally protected interest such that the

plaintiff suffered an injury in fact sufficient for standing.  In <u>Leyse</u>, the court considered the issue

of standing as it pertained to § 227(b)(1)(B), the provision of the TCPA concerning calls made to

residential telephone lines.  The plaintiff argued that the "called party" should not be interpreted

as the equivalent of a "residential subscriber" for the purposes of § 227(b)(1)(B).  Rather, he

argued that any resident of the home who uses the telephone line is a "called party" with a private

cause of action for $500 in statutory damages pursuant to § 227(b)(3)(B).  <u>Id.</u> at *1.  Although

the plaintiff in <u>Leyse</u> had picked up the phone, the call had been placed to Leyse's roommate,

who was the telephone subscriber.  The <u>Leyse</u> court concluded that the plaintiff was the

unintended and incidental recipient of the call for the purposes of § 227(b)(1)(B), and therefore

could not recover under the statute.  <u>Id.</u> at * 4.

 The <u>Leyse</u> court relied, in part, upon the reasoning of the court in <u>Kopff v. World

Research Group</u>, LLC, 568 F.Supp.2d 39, 40-42 (D.D.C. 2008), in which a District of Columbia

district court found that a wife did not have standing to bring an action for statutory damages

under the TCPA, where a business sent a fax in violation of the TCPA addressed to the plaintiff's husband, who was the president of the company for which the plaintiff served as executive assistant.  The Leyse court noted that, like the wife who had retrieved business faxes addressed to her husband, Leyse answered the phone, and that while the prerecorded message did not address his roommate by name, she was the intended recipient of the call because it was her name associated with the telephone number in the defendant's records.  Leyse, 2010 WL 23824000, at *4.  The court went on to note that if any person who receives a fax or answers a telephone call has standing to sue, then businesses will never be certain when sending a fax or placing a call with a prerecorded message whether the call violates the TCPA, because they will have no way of knowing whether the individual on the other end has given prior express consent or is the individual with whom the business has the existing business relationship.  Id.

The approach taken by the courts in Leyse and Kopff is in accord with the statutory scheme.  The statutory scheme simply cannot support an interpretation that would permit any "person or entity" to bring the claim for a violation, regardless of whether that person or entity was the called party (i.e., the intended recipient of the call).  Under such an interpretation, the exception contemplated by Congress in § 227(b)(1)(A) for calls made with "the prior express consent of the called party" would be rendered meaningless.  Accordingly, this Court finds that under the statute's plain meaning, it is the intended recipient of the call that has standing to bring an action for a violation of § 227(b)(1)(A)(iii).

Determining who is the intended recipient of the call is a much thornier issue which requires resort to the statutory purpose and legislative history of the TCPA.   First, however, it is necessary to parse out the claims asserted by Verizon Wireless and OnStar. The Court will turn

first to the claims asserted by Verizon Wireless.  In the Second Amended Complaint, Verizon Wireless sought actual damages in connection with calls made to its subscribers and statutory damages in connection with calls made to what it describes as "concession accounts."  During oral argument, however, Verizon Wireless conceded that double recovery by both Verizon Wireless and its subscribers is precluded by § 227(b)(3), which permits recovery of *the greater of* the actual monetary loss or $500 in statutory damages.  Therefore, Verizon Wireless conceded that it was precluded from seeking recovery for direct damages in connection with calls made to its subscribers because those subscribers, who were undisputedly the intended recipients of the calls, are entitled to raise claims for statutory damages under  § 227(b)(3).

Verizon Wireless thus on the record sought to narrow its claims under the TCPA to the 15,804 calls made to its concession accounts.  As noted by this Court during oral argument, however, Verizon Wireless failed to plead sufficient facts in the Second Amended Complaint regarding the concession accounts to permit the Court to ascertain whether Verizon Wireless was the intended recipient of those concession account calls or whether the individual employees to whom the concession accounts were assigned were the intended recipients.  Verizon Wireless therefore argued, that if permitted, it would re-plead facts demonstrating that the concession accounts are cellular service accounts owned and paid for by Verizon Wireless, which it either uses itself or makes available to certain of its employees for the purpose of conducting Verizon Wireless business.  While Verizon concedes that limited personal use of the concession account cell phones is permitted to those employees who are issued the phones, it contends that the employees have no expectation of privacy.  Thus, Verizon argues that the claims for statutory damages based upon the alleged TCPA violations belong to Verizon and not to its employees.

The issue of standing, however, is not as straightforward as Verizon suggests.  The TCPA expressly contemplates claims by businesses where the calls are directed to the business.  Specifically, § 227(b)(1)(D) makes it unlawful "to use an automatic telephone dialing system in such a way that two or more telephone lines of a multiline business are engaged simultaneously." 47 U.S.C.A. § 227(b)(1)(D).  In granting authority to the FCC to prescribe regulations to implement the requirements of subsection 227(b), § 227(b)(2) further instructs the FCC to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent."  The FCC declined to adopt such regulations.  In its September 17, 1992 Report and Order adopting the Rules and Regulations implementing the TCPA, the FCC noted the following:

> The TCPA also requires the Commission to consider whether specific regulations should be adopted regulating artificial or prerecorded voice calls to businesses.  § 227 (b)(2)(A). Concerns regarding telemarketer intrusions upon commerce are largely addressed in the rules, which prohibit autodialed and artificial or prerecorded message calls where the called party would incur costs for such calls, such calls would likely affect public health and safety, or where such calls would tie up two or more lines of a business simultaneously.  See 47 C.F.R. 64.1200(a)(1), (a)(4), and (b).  Commenters expressed concern that prerecorded message calls will affect public health and safety and impeded commerce.  Most commenters, however, do not raise privacy conerns with respect to prerecorded calls to businesses.  Based on the record and on the scope of the prohibitions on autodialers and prerecorded messages in the rules we adopt today, we are not persuaded that additional prohibitions on prerecorded voice message calls to businesses are necessary at this time.

See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Red. 8752, 8784, n.7.  Accordingly, the question becomes whether in proscribing the use of

certain practices in connection with the landlines of a business, the Legislature intended to exclude calls made to the cellular telephone lines of a business.  In other words, is § 227(b)(1)(A)(iii) limited strictly to cellular telephone service accounts held by individual subscribers, or does it encompass business subscribers as well.  Additionally, citing the regulatory history of the TCPA, Defendants raise issues regarding the applicability of § 227(b)(1)(A)(iii) given that Verizon incurred no charges for the call.

The Court is not prepared, on the record before it, to resolve whether Verizon indeed has standing to bring claims in connection with the concession account calls under the TCPA.  Any determination by the Court in this regard would clearly be advisory, as Verizon concedes that its claims, as currently pled in the Second Amended Complaint, do not set forth an adequate factual basis.  Though not pled in the Second Amended Complaint, certain of the concession accounts were apparently assigned to individual employees, while others were used for business demonstration purposes, and still others were unassigned phone lines.  These factual issues must first be adequately pled and, subsequently, the parties must adequately brief the issue of standing in light of Verizon's new factual allegations prior to this Court resolving the issue of standing and the viability of the claims.  Accordingly, the Court finds that Verizon has failed to plead facts in its Second Amended Complaint sufficient to support standing under the TCPA, and its TCPA claims are therefore dismissed.  However, since Verizon could potentially plead facts sufficient to support standing, Verizon shall have ten days from the issuance of the Court's Opinion and Order to file an amended TCPA claim consistent with the representations made to this Court during oral argument and in supplemental letter submissions following argument.

Turning next to the TCPA claims raised by OnStar, the Court noted during oral argument that OnStar's claims suffered from the same factual deficiencies as those of Verizon's concession accounts. Like Verizon Wireless, OnStar conceded that double recovery for statutory damages under § 227(b)(3) is precluded, but argued that it, rather than the OnStar subscribers that received the alleged violative calls, is the proper party to raise the claims. Following oral argument on the instant motion, OnStar submitted supplemental briefing asserting that, if permitted, it would re-plead more detailed facts that "confirm that it has standing while, at the same time, limit its TCPA claim for statutory damages to the specific calls that the OnStar system answered (and for which OnStar incurred the cost) *and that were not forwarded to or answered by the subscriber*." OnStar Supplemental Letter Br. dated Aug. 4, 2010 (Emphasis in original).

OnStar explained in its supplemental letter submissions that the nature of the OnStar equipment embedded in a vehicle requires OnStar to accept every call made to a vehicle, regardless of whether the OnStar subscriber has purchased phone minutes and is able to receive telephone calls using the equipment. OnStar claims that the vast majority of calls made to OnStar equipment are answered and handled internally by the equipment, for which OnStar incurs charges, without the subscriber even knowing that the call has been placed because many subscribers do not purchase minutes to use their OnStar equipment as a cell phone and because subscribers are often not in their vehicles.

Like Verizon, however, OnStar admittedly has not adequately pled its claims under the TCPA. Accordingly, OnStar's TCPA claims are dismissed and OnStar shall have ten days from the issuance of the Court's Opinion and Order to file an amended TCPA claim. While the Court has reservations as to the viability of OnStar's claims as OnStar's description of its service can

arguably be likened to that of an answering service, the Court is not prepared at this juncture, in the absence of adequate briefing from the parties addressing the novel issues presented, to rule on the viability of the claims.

The Court notes that while it is granting Verizon and OnStar leave to file a Third Amended Complaint, those claims must be consistent with the limitations and representations made by Verizon and OnStar in connection with the instant motion.  Additionally, Plaintiffs must properly plead a basis for this Court's diversity jurisdiction.  Specifically, Plaintiffs may not aggregate their claims and must identify the amount in controversy as to each defendant.

### B.  Plaintiffs' Claims Under the TCFAPA (Counts II and III)

The TCFAPA, 15 U.S.C. § 6104(a), limits access to the federal courts to those consumers who have been "adversely affected" by an illegal telemarketing call and who have suffered in excess of $50,000 in actual damages.  15 U.S.C. § 6104(a).  In the Second Amended Complaint, Plaintiffs sought damages under the TCFAPA in Counts Two and Three in connection with the "over eight million illegal Telemarketing Calls to Verizon Wireless customers and employees, and hundreds of thousands of calls to OnStar subscribers."  See Second Amended Complaint at ¶¶ 104, 112.  Accordingly, in the Second Amended Complaint, Plaintiffs clearly sought damages in connection with *all* of the calls made to both Verizon and OnStar subscriber accounts.

Pointing to the language of 15 U.S.C. § 6104(a) which provides that "[a]ny person adversely affected" has a private right of action, Plaintiffs initially argued in opposition to the instant motion to dismiss the TCFAPA claims that the statutory scheme permits actions by private "persons," including corporations and partnerships.  See Opp'n Br. at 19-20 (citing 800-JR-Cigar, Inc. v. GoTo.com, 437 F.Supp.2d 273, 296 (D.N.J. 2006); Medline Indus., Inc. v. Strategic

Commercial Solutions, Inc., 553 F.Supp. 2d 979, 989 (N.D. Ill. 2008)).  Plaintiffs argued that the legislative history of the TCFAPA further confirms that its remedies are not restricted to individual consumers in that it was enacted to eradicate illegal telemarketing by giving private parties the right to pursue actions for damages against illegal telemarketers, which right was to be liberally granted.  Opp'n Br. at 20 (citing H.R. Rep. No. 103-20, at 2-4, reprinted in 1994 U.S.C.C.A.N. 1626). Plaintiffs argued that an examination of the FTC's Telemarketing Sales Rule further illustrates this point.  The Sales Rule proscribes, among other things, the failure to transmit or cause to be transmitted the telephone number and telemarketer's name to the caller ID service of a recipient of a telemarketing call (16 C.F.R. § 310.4(a)(7)) and the failure to disclose the identity of the seller of the product being offered to the recipient of a telemarketing call (16 C.F.R. § 310.4(d)).  Plaintiffs argued that those regulatory provisions cannot be interpreted to bar claims brought by corporations and partnerships because illegal telemarketers could then function with impunity so long as they call businesses or people at their business numbers.

Irrespective of damages, Defendants argue that the TCFAPA is a consumer protection statute under which Plaintiffs, as telecommunications providers, lack standing.  Defendants reason that the TCFAPA expressly states that it was enacted to "offer *consumers* necessary protection from telemarketing deception and abuse."  15 U.S.C. § 6101(5) (emphasis added). Defendants point out that the TCFAPA directs the Federal Trade Commission ("FTC") to create rules prohibiting telemarketers from undertaking "a pattern of unsolicited telephone calls which the reasonable *consumer* would consider coercive or abusive of such *consumer's* right to privacy."  15 U.S.C. § 6102(a)(3)(A) (emphasis added).  The FTC has done just that, and as Defendants point out, has specifically exempted calls made to businesses in 16 C.F.R. § 310.6(b).

26

Pursuant to 16 C.F.R. §310.6(b)(7), "[t]elephone calls between a telemarketer *and any business*, except calls to induce the retail sale of nondurable office or cleaning supplies . . ." are exempt from the Telemarketing Sales Rule.  Accordingly, to the extent that Plaintiffs are viewed as the called parties for the purposes of the TCFAPA claims, Plaintiffs cannot escape the applicability of §310.6(b)(7), as the alleged violative calls can only be viewed as being made to businesses.  Clearly Plaintiffs do not have standing to assert such claims under the  TCFAPA.  In apparent recognition of this fact, Verizon Wireless has, in supplemental briefing to the Court following oral argument, reversed position.  Verizon now argues that Defendants "fundamentally misperceive Verizon Wireless's TCFAPA claim."  According to Verizon, its TCFAPA claim "is not based on unlawful calls made to users of Verizon Wireless Concession Account cell phones (i.e., calls made to Verizon Wireless's business); rather, the claim is based on calls made to Verizon Wireless customers."

The problem with Verizon's contention that it has limited its claims to those calls made to its subscribers is that it is belied by the language of Counts Two and Three of the Second Amended Complaint which, as previously noted, do not parse out the claims made to Verizon subscribers from those made to Verizon concession accounts.   Rather in the Second Amended Complaint, Verizon seeks damages under the TCFAPA in connection with the "over eight million illegal Telemarketing Calls to Verizon Wireless customers *and employees*."   (Emphasis added).  Additionally, at oral argument on the instant motion, Verizon likewise did not parse out its claims, arguing that an aggrieved person under the language of § 6104(a) can include a corporation or partnership.  Clearly any "misperception" by Defendants as to the Verizon's TCFAPA claims is the result of Verizon's failure to adequately plead such claims.  OnStar has

failed altogether to clarify for which claims it seeks relief under the TCFAPA (i.e., those calls answered internally by OnStar and/or those directed to its subscribers).   What is clear to this Court, however, with respect to Plaintiffs' allegations under both the TCFAPA and TCPA is that the claims have become something of a moving target, affording Defendants little opportunity to address the allegations.  This Court too has been hindered in its ability to address the instant motion to dismiss by Plaintiffs' constantly evolving claims.  Following oral argument on the instant motion, the parties have submitted no less than six letter briefs addressing Plaintiffs' ever changing claims.

To the extent that Verizon Wireless and OnStar bring claims under the TCFAPA as the called parties, those claims are clearly barred by §310.6(b)(7) and are hereby dismissed with prejudice.  However, to the extent that Verizon or OnStar seek to bring the TCFAPA claims on some "other" basis involving calls made to their subscribers, the Court is not prepared in the absence of a properly pled amended complaint and proper briefing, to dismiss those claims with prejudice.  This Court maintains doubt as to whether Plaintiffs have standing to assert claims involving calls made to their respective subscribers, as Plaintiffs themselves concede that they do not have prudential standing, or presumably representational standing, in that they seek to recover damages "on their own behalf."  See Opp'n Br. at 27, n.13.   Additionally, the Court questions whether double recovery is even available under the statutory scheme such that Plaintiffs can assert claims for which their subscribers also have a right of action.  Nevertheless, in light of the novel legal issues presented and the lack of adequate briefing, the Court will dismiss Plaintiffs' TCFAPA claims involving their respective subscribers without prejudice and Plaintiffs shall have ten days from the issuance of the Court's Opinion and Order to file an amended TCFAPA claim

to the extent Plaintiffs believe they can assert viable claims "on their own behalf" under the TCFAPA.  While this Court did not address the issue of damages in light of the Plaintiffs' failure to establish standing, the Court notes also that the Third Amended Complaint must set forth damages sufficient to satisfy the statutory requirement.

## V.   *Conclusion*

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiffs' TCPA claims are dismissed without prejudice and Plaintiffs shall have ten days to file a Third Amended Complaint in accordance with this Court's Opinion and Order.  Plaintiffs' TCFAPA claims involving calls made to Verizon Wireless concession accounts and which OnStar handled directly without forwarding to its subscribers are dismissed with prejudice.  Those TCFAPA claims involving calls made directly to Plaintiffs' subscribers are dismissed without prejudice and Plaintiffs shall have ten days to file a Third Amended Complaint in accordance with this Court's Opinion and Order.  Plaintiffs' NJCFA claims are dismissed with prejudice.  To the extent that Plaintiffs file a Third Amended Complaint, such Complaint must properly set forth jurisdictional allegations consistent with the oral representations made by counsel during argument on the instant motion.

Dated: September 17, 2010

                                                     ___/s/ Freda L. Wolfson_____
                                                     FREDA L. WOLFSON, U.S.D.J.